02-12-056-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-12-00056-CV

 

 


 
 
 Kevin
 D. Spruell AND Darcy Spruell, Individually and as Next Friend of Camryn
 Spruell, a Minor
  
 v.
  
 USA
 Gardens at Vail Leasco, L.L.C., USA Gardens at Vail, L.L.C., and Internacional
 Realty, Inc.
 
 
 §
  
 §
  
  
 §
  
 §
  
  
 
 
 From the 431st District
 Court
  
 of
 Denton County (2008-40389-362)
  
 January
 31, 2013
  
 Opinion
 by Justice Walker
 
 


JUDGMENT

 

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed. 

          It
is further ordered that appellants Kevin D. Spruell and Darcy Spruell,
Individually and as Next Friend of Camryn Spruell, a Minor shall pay all of the
costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS 

 

 

By_________________________________   
Justice Sue Walker

 

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

 

NO. 02-12-00056-CV

 

 


 
 
 Kevin D. Spruell AND Darcy Spruell, Individually
 and as Next Friend of Camryn Spruell, a Minor
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 USA Gardens at Vail Leasco, L.L.C.; USA Gardens at
 Vail, L.L.C.; and Internacional Realty, Inc.
 
 
  
 
 
 APPELLEES
 
 


 

----------

FROM THE 431st
District Court OF Denton COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          This
is a summary judgment appeal.  Two-and-a-half-year-old Camryn Spruell received
debilitating, lifelong injuries when she fell from an open window in her third-story
apartment.  Appellant Kevin D. Spruell and Appellant Darcy Spruell,
individually and as next friend of Camryn Spruell, the divorced parents of
Camryn, filed suit against Appellees USA Gardens at Vail LeasCo, L.L.C.; USA
Gardens at Vail, L.L.C.; and Internacional Realty, Inc.,[2]
asserting causes of action for premises liability, breach of the implied
warranty of good and workmanlike repair, negligent repair, and gross
negligence.  Appellees filed no-evidence and traditional motions for summary
judgment on all claims asserted by Kevin and Darcy, which the trial court
granted.  Kevin and Darcy both perfected appeals.  On appeal, Kevin and Darcy
filed separate briefs, both raising the same two points:  the trial court erred
by granting Appellees’ motion for traditional and no-evidence summary judgment,
and the trial court erred by denying Kevin’s and Darcy’s motions to strike the
testimony of Michael Welton.  We will affirm.

II.  Factual and Procedural Background

          In
2007, Darcy visited the Gardens at Vail Apartment Homes and viewed apartment
3319; she decided to rent the apartment.  Darcy entered into a Texas Apartment
Association (TAA) form lease entitled “Apartment Lease Contract” (the Lease
Agreement) with the owner of the complex—USA Gardens at Vail LeasCo, L.L.C.—in January
2007. 

          The
Lease Agreement contains the following paragraph:

24.  RESIDENT SAFETY AND PROPERTY LOSS.  You and all
occupants and guests must exercise due care for your own and others’ safety and
security, especially in the use of smoke detectors, door and window locks, and
other safety or security devices.  You agree to make every effort to follow the
Security Guidelines on page 5.  Window screens are not for security or keeping
people from falling out.

The
Lease Agreement also contains Paragraph 28, which allows the landlord re-entry
into the apartment.  Upon move in, Darcy inspected the apartment and completed
the TAA’s “Inventory and Condition Form,” noting no damage or defects in the
living room windows, latches, and screens on the form.

          After
Darcy settled into the third-floor apartment with her daughter Camryn, Darcy
submitted a maintenance request for the two windows in the living room because the
right window would slam down if opened and the left one would gradually work
its way down after it had been opened.  The windows were low-sill windows; the
sills were seven inches off the ground.  Darcy wanted to be able to open the
windows and keep them open.  Felix Galvan on the maintenance staff at the
apartment complex lubricated the track of the left window, and it then stayed
open to Darcy’s liking.[3] 

          On
May 19, 2007, Darcy opened the left window three-fourths to 100% of its
capacity and wanted it to remain open to provide fresh air.  On that day, while
Darcy was cooking in the apartment, Camryn fell from the third-story apartment
through the left window in the living room and sustained serious and permanent
injuries.  At the time of the accident, the screen covering the window from
which Camryn fell contained the following language:  “WARNING:  Screen will not
stop child from falling out window.  Keep child away from open window.” 

III.  Summary Judgment for Appellees Was Proper

          In
their first points, both Appellants argue that the trial court erred by
granting Appellees’ traditional and no-evidence motion for summary judgment.

A. 
Standard of Review

          When
a party moves for both no-evidence and traditional summary judgment, we first
review the trial court’s summary judgment under the no-evidence standard.  Ford
Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).  Under that
standard, after an adequate time for discovery, the party without the burden of
proof may, without presenting evidence, move for summary judgment on the ground
that there is no evidence to support an essential element of the nonmovant’s
claim or defense.  Tex. R. Civ. P. 166a(i).  The motion must specifically state
the elements for which there is no evidence.  Id.; Timpte Indus.,
Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009).  The trial court must grant
the motion unless the nonmovant produces summary judgment evidence that raises
a genuine issue of material fact.  See Tex. R. Civ. P. 166a(i) &
cmt.; Hamilton v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008).

          When
reviewing a no-evidence summary judgment, we examine the entire record in the
light most favorable to the nonmovant, indulging every reasonable inference and
resolving any doubts against the motion.  Sudan v. Sudan, 199 S.W.3d
291, 292 (Tex. 2006).  We review a no-evidence summary judgment for evidence
that would enable reasonable and fair-minded jurors to differ in their
conclusions.  Hamilton, 249 S.W.3d at 426 (citing City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to
the nonmovant if reasonable jurors could, and we disregard evidence contrary to
the nonmovant unless reasonable jurors could not.  Timpte Indus., 286
S.W.3d at 310 (quoting Mack Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582
(Tex. 2006)).  If the nonmovant brings forward more than a scintilla of
probative evidence that raises a genuine issue of material fact, then a
no-evidence summary judgment is not proper.  Smith v. O’Donnell, 288
S.W.3d 417, 424 (Tex. 2009); King Ranch, Inc. v. Chapman, 118 S.W.3d
742, 751 (Tex. 2003), cert. denied, 541 U.S. 1030 (2004).

          When
a trial court’s order granting summary judgment does not specify the ground or
grounds relied on for its ruling, summary judgment will be affirmed on appeal
if any of the theories presented to the trial court and preserved for appellate
review are meritorious.  Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 216 (Tex. 2003); Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 473 (Tex. 1995).  When the trial court’s judgment rests upon more than one
independent ground or defense, the aggrieved party must assign error to each
ground, or the judgment will be affirmed on the ground to which no complaint is
made.  Scott v. Galusha, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994,
writ denied).

B.  No Evidence of Breach
of the Implied Warranty of Good and Workmanlike Repair and No Evidence of
Negligent Repair

 

          Appellants
argue that genuine issues of material fact exist on their claims for breach of
the implied warranty of good and workmanlike repair.  Darcy argues that
Appellees breached the warranty of good and workmanlike repair when they
undertook to repair her window so that it would open fully but failed to take
any precautions to prevent children from falling from the window.  Kevin argues
that the questions of the wrongdoing in the performance of the repairs and
whether the repairs were the proximate cause of Camryn’s injuries are genuine
issues of fact, precluding summary judgment. 

          An
implied warranty exists that a service provider will perform repairs in a good
and workmanlike manner.  Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349,
354 (Tex. 1987).  A good and workmanlike manner means “that quality of work
performed by one who has the knowledge, training, or experience necessary for
the successful practice of a trade or occupation and performed in a manner
generally considered proficient by those capable of judging such work.”  Parkway Co. v. Woodruff,
901 S.W.2d 434, 446 (Tex. 1995); Melody
Home Mfg. Co., 741 S.W.2d at 354.  The implied warranty focuses on
a service provider’s conduct by defining the level of performance expected when
the parties fail to make an express provision in their contract for such
performance.  Centex Homes
v. Buecher, 95 S.W.3d 266, 273–74 (Tex. 2002).

Here,
Darcy submitted a maintenance request for the windows in the living room of her
apartment to be repaired to remain open whenever she raised them.  The
apartment complex repaired the windows pursuant to Darcy’s maintenance request;
the windows functioned as normal windows, remaining open when raised.  No
evidence exists that the windows in Darcy’s apartment were not repaired in a
good and workmanlike manner.  To the extent that Appellants claim that
Appellees breached the implied warranty to perform the repairs in a good and
workmanlike manner because Appellees did not install safety locks, a window
guard, or other childproof devices on the windows, Appellants have pointed us
to no case law, and we have found none, holding that the failure to install additional,
unrelated features constitutes a breach of the implied warranty to perform
repairs in a good and workmanlike manner.  Accord Sears, Roebuck
& Co. v. Nichols, 819 S.W.2d 900, 905 (Tex. App.—Houston [14th Dist.]
1991, writ denied) (holding that Sears did not breach the implied warranty to
repair a lawnmower in a good and workmanlike manner by not removing belt
knowledgeable customer did not want removed).

          Moreover,
Michael Welton, an expert with thirty years of experience who was originally
designated by Appellants and later cross-designated by Appellees, testified at
his deposition that the features that––after Camryn’s fall––Appellants claim
should have been installed on the window were not required by any building
code.  Welton testified that there was no code or standard that required window
guards to be placed on the window to constrict the window opening at the time
of the accident.  Welton testified that under all the standards, it was
appropriate for the window to open to its full height.  Welton also testified
that at the time of the accident, the low window sills did not violate any
standard or code.  Welton said that Appellees did not violate any code or standard
by failing to remedy or change the window screens or with regard to the
stickers on the screen.  Welton testified that there was “no standard written,
unwritten, published, [or] unpublished that would suggest that the window as it
appeared in May 2007 was a safety hazard.”  Concerning any duty owed by
Appellees to Appellants, Welton testified that an apartment landlord does not
have a duty to inspect the interior of an apartment on a regular basis after
the apartment has been rented, unless there is an emergency or a suspicion of
illegal activity.[4] Welton agreed that Appellees
did not “do anything to breach any duty, to do a good workmanlike and safe
manner repair”; that they did not “improperly perform repairs with regard to
this window because there was no standard that [they] could have met or
breached”; and that they met all minimum standards with regard to the standard
of care. 

          Having
examined the entire record in the light most favorable to Appellants as the
nonmovants, indulging every reasonable inference and resolving any doubts
against the motion, we hold that there is no evidence that would enable
reasonable and fair-minded jurors to differ in their conclusions because there
is no evidence that Appellees’ repair of the window—which was not improperly
performed, was completed in accordance with the maintenance request, enabled
the window to work properly after the repair, satisfied Darcy, and was not in
violation of any code or standard—breached the implied warranty of good and
workmanlike repair.  See Hamilton, 249 S.W.3d at 426; Sudan, 199
S.W.3d at 292; see also Bossier Chrysler Dodge II, Inc. v. Rauschenberg,
201 S.W.3d 787, 805 (Tex. App.—Waco 2006) (holding that “we cannot say
that the record contains evidence which ‘would enable reasonable and
fair-minded people’ to conclude that Bossier County breached an implied
warranty of good and workmanlike performance” when requested repairs were made
in a good and workmanlike manner, though Bossier County was not able to
completely fix the oil leak), aff’d in part and rev’d in part on other
grounds by 238 S.W.3d 376 (Tex. 2007); U.S. Marine Corp. v. Kline, 882
S.W.2d 597, 601 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding that
there was no evidence, expert or otherwise, to show that boat repairs were done
negligently, thus overturning jury’s finding that boat repairs were not
performed in a good and workmanlike manner); Nichols, 819 S.W.2d at 905
(holding that Sears did not breach implied warranty as a matter of law because
Sears performed work that was authorized by customer on the motor mounts in a
proficient manner; Sears was not required to remove belt because such work was
not requested by customer).  The trial court therefore properly granted
Appellees’ no-evidence motion for summary judgment on Appellants’ claims for
breach of the implied warranty of good and workmanlike repair.

          Finally,
no discernable difference exists between a claim that repairs were not performed
in a good and workmanlike manner and a claim that repairs were negligently
performed.  See Coulson v. Lake L.B.J. Mun. Util. Dist., 734 S.W.2d 649,
651 (Tex. 1987); see also Archibald v. Act III Arabians, 755 S.W.2d 84,
86 (Tex. 1988) (Wallace, J., dissenting).  To the extent that there is a
difference between the standards of care in actions for negligence and for breach
of the implied warranty of good and workmanlike performance of services, the
latter is the more demanding standard, and therefore conduct that does not
breach the implied warranty of good and workmanlike performance of service does
not constitute negligence.  Daneshjou Co. v. Goergen, Nos.
03-04-00730-CV, 03-04-00734-CV, 03-04-00735-CV, 03-04-00737-CV, 03-04-00738-CV,
03-04-00739-CV, 03-04-00740-CV, 2008 WL 3171256, at *7 n.14 (Tex. App.—Austin
Aug. 8, 2008, pet. denied) (mem. op.).  Thus, the trial court properly granted
Appellees’ no-evidence motion for summary judgment on Appellants’ claims for
negligent repair.  We overrule that portion of Appellants’ first points
pertaining to their claims for breach of the implied warranty of good and
workmanlike repair and negligent repair.

C.  Premises
Liability Claims and Gross Negligence Claims Fail Because No Exception to the
No-Duty Rule Applies

 

          Appellants
argue that genuine issues of material fact exist on their premises liability
claim.  In a premises-liability case, the plaintiff must establish a duty owed
to the plaintiff, breach of the duty, and damages proximately caused by the
breach.  Del Lago Partners, Inc. v. Smith, 307 S.W.3d 762, 767 (Tex.
2010).  Whether a duty exists is a question of law for the court.  Id. 
In premises-liability cases, the scope of the duty turns on the plaintiff’s
status.  Id.

          Generally,
a landlord has no duty to tenants or their invitees for dangerous conditions on
the leased premises.  See, e.g., Johnson Cnty. Sheriff’s Posse, Inc.
v. Endsley, 926 S.W.2d 284, 285 (Tex. 1996); Brownsville Navigation
Dist. v. Izaguirre, 829 S.W.2d 159, 160 (Tex. 1992).  This rule stems from
the notion that a lessor relinquishes possession of the premises to the lessee. 
Endsley, 926 S.W.2d at 285.  Texas courts, however, recognize several
exceptions to this general no-duty rule.  A lessor may be liable for injuries
arising from (1) the lessor’s negligent repairs,
(2) concealed defects of which the lessor was aware when the premises were
leased, and (3) a defect on a portion of the premises that remained under the
lessor’s control.  Id.; see also Restatement (Second) Of Torts §§
357 (regarding negligent repairs), 358 (regarding concealed defects), 360
(regarding portion of premises remaining in lessor’s control).

          Appellants
rely on the first and third exceptions to the general no-duty rule, contending
that, under these exceptions, Appellees owed them a duty.  As discussed above,
no evidence exists that Appellees’ repair of the window was performed
negligently; thus, the first exception to the general no-duty rule does not
apply here.  See Strunk v. Belt Line Rd. Realty Co., 225 S.W.3d 91, 99
(Tex. App.—El Paso 2005, no pet.) (upholding summary judgment for premises
owner lessor when plaintiff—lessee’s invitee—failed to produce a scintilla of
evidence that owner had control over the premises or had made a negligent
repair).

          Appellants
argue under the third exception to the general no-duty rule—the right-of-control
exception—that Appellees retained effective control over the windows in Darcy’s
apartment because the terms of the lease permitted Appellees to enter Darcy’s
apartment to make repairs; expressly prohibited Darcy from making any repairs
to the property; and required Darcy to agree not to alter, damage, or remove property.
 Appellants further argue that  “[b]ecause Appellees retained a right of
re-entry to make repairs to the windows, coupled with the prohibition on
Appellants[’] repairing or altering the windows, Appellees retained control
over the windows, creating a duty to maintain them so as not to pose a danger
to Appellants.”

          Liability
under the right-of-control exception is based on physical possession of common
areas; the liability question “turns on who had possession of a part of the
premises rather than a mere right of re-entry.”  Shell Oil Co. v. Khan,
138 S.W.3d 288, 296 (Tex. 2004).  As the Texas Supreme Court stated in Khan,

          We have
addressed Khan’s precise arguments before, and rejected them.  In Flynn v.
Pan American Hotel Co., the owner of the St. Anthony Hotel in San Antonio
leased the entire property to another corporation to operate.  The lessor
retained the right to make repairs or improvements at will (and in fact made
extensive renovations), and barred the lessee from making any changes without
the lessor’s written consent.  Nevertheless, when a hotel employee was injured
in an elevator accident, we held the lessor could not be held liable because it
did not retain a right to control any part of the premises:

 

The terms of the
lease, which have been stated, and the acts of the parties to the lease show
that it was contemplated and intended that respondent should have the right to
enter on the property to make improvements and repairs; but the reservation by
a lessor of a right to enter the premises to make such repairs and alterations
as it may elect to make is not a reservation of control over a part of the
building and an obligation on the part of the lessor to make repairs does not
arise from the reservation of such right.

 

          Because the defect in Flynn was not
concealed, we held the lessee assumed responsibility for existing defects, and
the landlord was not liable to the lessee’s employee.

Id. at
297 (footnotes omitted).  

          Here,
the lease’s terms regarding re-entry are not in dispute; paragraph 28 of the
lease gave Appellees a right of re-entry.  But, as set forth above, a
contractual right of re-entry by Appellees to make repairs or improvements is
not a reservation of control over a portion of the building subjecting
Appellees to liability.  See id.  Thus, merely retaining the right to
re-enter the premises to make alterations and repairs does not trigger the
right-of-control exception to the general no-duty rule.  Darcy and Camryn had
possession of the apartment containing the window; no evidence exists that
Appellees retained “possession” of the window at issue.[5] 


          Having
examined the entire record in the light most favorable to Appellants as the
nonmovants, indulging every reasonable inference and resolving any doubts
against the motion, we hold that there is no evidence that would enable
reasonable and fair-minded jurors to differ in their conclusion that Appellees
had no right to control the window in Darcy’s living room.  See Khan,
138 S.W.3d at 298 (holding that Khan presented no evidence that Shell had a
right to control premises conditions at the station); Daitch v. Mid-Am.
Apartment Cmtys., Inc., 250 S.W.3d 191, 195 (Tex. App.—Dallas 2008, no
pet.) (holding that there was no evidence that Mid-America retained physical
possession of the air conditioner or that apartment dweller used it in common
with others); see also Strunk, 225 S.W.3d at 99.[6] 
Because no evidence exists that Appellees fall within either of the two
exceptions pleaded by Appellants to the general no-duty rule, the trial court
properly granted Appellees’ no-evidence motion for summary judgment on
Appellants’ claims for premises liability.  See Khan, 138 S.W.3d at 298
(holding that trial court properly granted summary judgment on premises
liability claim); Daitch, 250 S.W.3d at 195 (same); Strunk,
225 S.W.3d at 99 (same).  And because no evidence exists that Appellees fall
within either of the two exceptions pleaded by Appellants to the general
no-duty rule, the trial court also properly granted Appellees’ no-evidence motion
for summary judgment on Appellants’ claims for gross negligence.  See City
of Waco v. Kirwan, 298 S.W.3d 618, 623 (Tex. 2009) (“As with negligence
actions . . . a defendant may be liable for gross negligence only to the extent
that it owed the plaintiff a legal duty.”); West v. SMG, 318 S.W.3d 430,
442–43 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding that trial court
did not abuse its discretion by granting SMG’s motion for summary judgment
because concertgoer failed to bring forth sufficient evidence on the element of
duty, a necessary element of her negligence and gross negligence claims).  We
overrule the remainder of both Appellants’ first points.[7]

IV. 
Trial Court
Did Not
Err by
Denying Appellants’

Motion
to Strike
the Testimony
of Michael
Welton

          Both
Appellants in their second points contend that the trial court erred by denying
their motions to strike the testimony of Michael Welton and by considering “the
inadmissible testimony of Appellants’ de-designated expert witness Michael
Welton.”  Darcy sets forth the following procedural background related to this point:

          Appellants initially designated Mr. Welton to
be a testifying expert, and Mr. Welton was deposed.  Appellants then
de-designated Mr. Welton as a testifying expert, re-designated him as a
consulting-only expert, and affirmatively averred that he would not be called
to testify.  However, Appellees nevertheless relied heavily on the deposition
testimony of Mr. Welton in support of their summary judgment motion. 
Appellants timely objected to and moved to strike Appellees’ use of the
testimony of Appellants’ de-designated expert witness Michael Welton as summary
judgment evidence.  Under the Rules of Civil Procedure, after his
de-designation as a testifying expert and re-designation as a consulting-only
expert, his opinions and beliefs were no longer discoverable or admissible.  [Citations
omitted.][[8]] 

          Appellants’
argument fails to acknowledge that the trial court conducted a hearing and signed
an order allowing Appellees to cross-designate Welton as a testifying expert for
Appellees.  Appellees thus relied on the testimony of Welton as their own expert
witness, who testified regarding the window’s compliance with applicable
building code standards, in support of Appellees’ motion for summary judgment. 


Appellants
raise no arguments challenging Appellees’ expert’s qualifications; they contend
only that Appellees were not permitted to rely on the expert that they had
de-designated as a testifying expert and redesignated as a consulting expert. 
This premise is not supported by case law.  See Tom L. Scott, Inc. v.
McIlhany, 798 S.W.2d 556, 559–60 (Tex. 1990) (orig. proceeding) (rejecting
defendants’ redesignation of testifying experts as consulting experts and stating
that the protection afforded by the consulting expert privilege is intended to
be only “a shield to prevent a litigant from taking undue advantage of his
adversary’s industry and effort, not a sword to be used to thwart justice or to
defeat the salutary objects” of discovery); accord Hooper v. Chittaluru,
222 S.W.3d 103, 108 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)
(concluding that appellant should not have been prohibited from calling Dr.
Lambert as a witness solely on the basis that Dr. Lambert was appellee’s expert);
Castellanos v. Littlejohn,
945 S.W.2d 236, 241 (Tex. App.—San Antonio 1997, orig. proceeding) (explaining
that a party will not be permitted to de-designate an expert to protect his or
her opinions from discovery when there is an improper purpose behind the de-designation);
see also Lopez v. Martin,
10 S.W.3d 790, 794–95 (Tex. App.—Corpus Christi 2000, pet. denied).  Moreover, after
a hearing before the trial court, the trial court granted Appellees’ request to
designate Welton as an expert for Appellees.  We therefore hold that the trial
court did not abuse its discretion by denying Appellants’ motion to strike the
testimony of Welton.  See, e.g., McIlhany, 798 S.W.2d at 559–60.  We
overrule both Appellants’ second points.

V.  Conclusion

Having
overruled both Appellants’ two points, we affirm the trial court’s judgment.

 

 

SUE WALKER
JUSTICE

 

PANEL: 
WALKER, MCCOY, and GABRIEL, JJ.

 

DELIVERED:  January 31, 2013









[1]See Tex. R. App. P. 47.4.





[2]Kevin also sued Eric
Frankfurt Homes, Inc. but later nonsuited his claims against Eric Frankfurt
Homes.  Appellees also nonsuited their crossclaims against Eric Frankfurt
Homes.  Eric Frankfurt Homes is not a party to this appeal. 





[3]The maintenance request
was submitted February 20, 2007, and the repairs were completed March 21, 2007.






[4]Welton did offer his opinion
that Appellees should have placed a pin in the window so that it would open
only four inches.  Welton conceded that Appellees’ failure to do this did not
breach the implied warranty to repair the window in a good and workmanlike
manner and that no standard or code required this; he based his opinion on what
he claimed to be Appellees’ “fiduciary duty” to the residents in the building.  





[5]Appellants’ subargument—that
the window formed the “exterior envelope of the building” and was therefore a
common area that was under Appellees’ control—likewise fails.  See Stein
v. Gill, 895 S.W.2d 501, 503 (Tex. App.—Fort Worth 1995, no writ)
(holding that because steps accessed only lessee’s apartment and deck, they
were not a common area but instead were part of the leased property that lessor
conveyed exclusively to lessee under the apartment lease).





[6]Appellants urge us to rely
on Jones v. Houston Aristocrat Apartments, Ltd., 572 S.W.2d 1 (Tex.
App.—Houston [1st Dist.] 1978, writ ref’d n.r.e.).  Jones held that the
provisions of a lease—which permitted the landlord to enter the premises for
the purpose of making repairs and forbade the tenant from making any alteration
or improvement in the premises without the prior consent of the
landlord—granted the landlord effective control of the flooring in the
apartment.  Id. at 3.  Because the Texas Supreme Court implicitly
overruled the 1978 Jones opinion in its 2004 Khan opinion, we
decline to follow Jones.  See Khan, 138 S.W.3d at 296.





[7]Because we have held that
no evidence exists supporting Kevin’s causes of action, we need not address
Kevin’s argument that his causes of action were not barred by a statute of
limitations.  See Tex. R. App. P. 47.1 (requiring appellate court to address
only issues necessary to final disposition of the appeal).





[8]A similar version of this
background is set forth in Kevin’s brief.