Lino LOPEZ, Appellant,

v.

Robert R. MARTIN, d/b/a Coldwell
Banker Martin Realtors, et
al., Appellees.

No. 13–97–911–CV.

Court of Appeals of Texas,
Corpus Christi.

Jan. 27, 2000.

Michael Preston Warren, Davidson &
Troilo, Austin, Diana McQuillin Liebmann,
San Antonio, for appellant.

C.M. Henkel, III, Ford & Ferraro, Rich-
ard J. Hatch, Jr., The Hatch Law Firm,
Corpus Christi, for appellees.

## OPINION

Opinion by Chief Justice SEERDEN.

This is an appeal from a take-nothing judgment against plaintiffs Porfirio and Mary Lopez and intervenor, Lino Lopez, Appellant here, for claims against Robert Martin, d/b/a Coldwell Banker Martin Realtors (CBMR), Ray Ballentine, Gregory Dennis, and Gary L. Martin. The claims arose from plaintiffs' purchase of real property.[2] They alleged negligence, Texas Deceptive Trade Practices Act (DTPA) violations, statutory and common law fraud, misrepresentation, spoliation of evidence, and gross negligence.

The jury found that the defendants had violated the DTPA, and found them liable for negligent misrepresentation, negligence, and both statutory and common law fraud. The jury also found that the Lopezes were in possession of sufficient information to discover these acts on November 29, 1990. This finding resulted in a take-nothing judgment because limitations barred the suit. By three issues, Appellant now challenges: (1) the legal sufficiency of the evidence to support the jury's finding that he should have discovered defendants' acts on November 29, 1990; (2) the factual sufficiency of that evidence for the same purpose; and (3) the trial court's denial of his motion to compel discovery of information provided by a designated testifying expert. We affirm.

The record indicates that Appellant operated a trucking business from his home. He had been parking his trucks on residential lots he owned. When the City of Corpus Christi discovered this practice, it informed Appellant that he was violating a zoning ordinance and directed him to park his trucks elsewhere. Appellant undertook a search for an appropriately-zoned property. When he found one, Appellant called the listed real estate agent, CBMR, and spoke with Gregory Dennis.

Appellant's brother and sister-in-law, Porfirio and Mary Lopez, purchased the property for his benefit. Mary Lopez applied for a loan to finance the purchase and was required to have the property appraised. She hired Ray Ballentine to perform the appraisal. Ballentine submitted a report which contained a statement that the property had full public utilities.

Mary Lopez closed the purchase of the property on November 29, 1990. In 1991, the City of Corpus Christi connected water service to the property. By late 1993 and early 1994, Appellant began planning improvements to the property.[3] He requested that Mary Lopez obtain electrical power in January 1994. She contacted the electricity provider, CP & L, but the utility refused to connect to the property because it determined that the property was unplatted. Appellant asserts that without electricity, he cannot improve the property as he had planned.

By his first and second issues, Appellant argues the evidence is legally insufficient to support the finding that, by November 29, 1990, he was in possession of sufficient facts to cause an ordinarily prudent person to investigate whether the property lacked the utilities sufficient to support his intended development of the property. Alternatively, he argues that

purchased for the benefit of Lino Lopez, who is apparently reimbursing Mary and Porfirio for the purchase price. Lino Lopez is the only appellant here. Any questions regarding his standing have been waived.

2. The record indicates that Mary and Porfirio Lopez are now the record owners of the property in question. However, there is some indication in the record that the property was

3. Appellant sought to construct a driveway onto the property and build a shop for maintaining and repairing his trucks.

the evidence is factually insufficient to support the same conclusion.

In conducting a legal sufficiency review, we only consider the evidence and inferences tending to support the findings. This evidence is viewed in a light most favorable to the findings and we disregard all evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). So long as there is more than a scintilla of evidence that supports the finding, the challenge will be overruled. *Id.* By contrast, in a factual sufficiency review, we examine all of the evidence, regardless of its effect on the reviewed finding. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). We reverse the challenged finding only if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

The question before us is the degree of Appellant's [4] knowledge of facts which would have caused him to make an inquiry about the condition of the purchased property. The discovery rule requires the Appellant to exercise reasonable care and diligence to discover facts, conditions, or circumstances which would cause a reasonable person to make an inquiry leading to the discovery of the injury. *See Stewart Title Guar. Co. v. Becker,* 930 S.W.2d 748, 756 (Tex.App.—Corpus Christi 1996, writ denied). Thus, so long as Appellant was in possession of sufficient facts to lead a reasonable person to inquire about the status of utilities on the property, he will be charged with sufficient notice under the discovery rule.

Appellant admits that this case can generally be labeled as a "platting case." We agree inasmuch as the Lopezes and Appellant put the platting ordinance of the City of Corpus Christi into evidence at trial. This ordinance, as well as the local government code, prohibit the connection of utilities to unplatted property. *See* Tex. Loc. Gov't Code Ann. §§ 212.004 & 212.045 (Vernon 1998). Thus, Appellant's awareness of sufficient facts to lead him to further inquiry about the effect of the platting ordinance on his ability to connect utilities to the property, while not dispositive of notice, will tend to show that he had notice.

Mary and Porfirio Lopez signed an earnest money contract on September 19, 1990. This document states that the Lopezes bought the property "as is." They also signed several closing documents provided by San Jacinto Title Company, including the purchaser's general acceptance. This document explains that the title policy is subject to zoning and platting ordinances of the City of Corpus Christi. The general acceptance further explains that "if the property is not platted, I have been informed that I should seek advice of my attorney to determine if there would be any difficulty improving the property." The Lopezes also signed a warranty deed with a vendor's lien on November 30, 1990. This document makes the conveyance of the property subject to all zoning laws, regulations, and ordinances of municipal and/or other governmental authorities. None of these documents either describe the property as "platted" or give a legal description of the property by referring to a plat. The deed describes the property by metes and bounds.

The record also contains testimonial evidence. Appellant argues that we may only consider documentary evidence in this case because the issue essentially involves compliance with platting ordi-

4. The facts of this case make it readily apparent that Mary Lopez acted as an agent for Appellant in conducting this transaction. *See generally Ames v. Great S. Bank,* 672 S.W.2d 447 (Tex.1984). Mary Lopez expressly acknowledged this relationship throughout her testimony, as did Appellant. The defendants understood this to be the nature of the relationship, and were entitled to believe that Mary had authority to act for Appellant such that any statements to her in the scope of her agency would be imputed to Appellant. *See Wyndham Hotel Co. v. Self,* 893 S.W.2d 630 (Tex.App.—Corpus Christi 1994, writ denied).

nances. We disagree. In a similar case, the court noted that suits "concerning compliance with platting will **primarily** depend on documentary evidence. . . ." *Precision Sheet Metal Mfg. Co., Inc. v. Yates,* 794 S.W.2d 545, 550 (Tex.App.—Dallas 1990, writ denied) (emphasis added). The *Yates* court relied solely on documentary evidence because the trial court granted summary judgment in favor of the vendors. *Id.* at 547. Thus, the only evidence before the court was documentary evidence. Certainly, documentary evidence in platting cases, where it is available, assures reliability. *Id.* However, the preference for documentary evidence does not preclude consideration of otherwise-reliable testimonial evidence.

Here the significant testimonial evidence was provided by two closing officers of the title company. Peggy Scherer testified that she thoroughly reviewed the general acceptance with Mary Lopez. She stated that she read the document verbatim to Mary and, at that time, advised her that the property was not listed in the plat records. Scherer testified that she read the aforementioned last clause of the first paragraph of the acceptance, explaining that the purchaser should seek the advice of an attorney if the property is unplatted to determine if there would be any difficulty improving the property. She said she provided Mary with an opportunity to ask questions and insisted she always answered such questions to the best of her ability, or referred the question to a more qualified person. The contemporaneously-made handwritten notes of Mary Lopez indicate a need to call officials in the City Planning Office to discuss "platting." Lucille Skaggs also testified to her belief, based on forty years experience in closing land sales, that consumers understand the significance of platting.

■ Actual notice or inquiry notice is required to start the running of the limitations period for a DTPA claim. *ECC Parkway Joint Venture v. Baldwin,* 765 S.W.2d 504, 509 (Tex.App.—Dallas 1989,

writ denied). Here, the evidence recited is sufficient to establish that either Appellant or his agent was in possession of sufficient facts to warrant a person of reasonable prudence to conduct further investigation into whether the land in question was platted and, accordingly, whether he would have any difficulty connecting utilities to the property. This evidence also shows that Appellant was in possession of such knowledge at the time of closing in November 1990. The evidence is legally sufficient to support the jury's finding. Appellant's first issue is overruled.

We now turn to the factual sufficiency of the evidence. According to Appellant, the documents cited above did not state that the property lacked utilities. In fact, Ballentine's appraisal expressly stated that the property had full public utilities. Moreover, Scherer testified that she told Mary Lopez that the property was not listed in the plat records and was described by a metes and bounds description. She said those statements indicate that land is unplatted, but admitted that she never specifically said the property was "unplatted."

Still, there is factually sufficient evidence to support the jury's finding. The notice required here is inquiry notice. *See Becker,* 930 S.W.2d at 756 (citing *Borderlon v. Peck,* 661 S.W.2d 907, 909 (Tex. 1983)). As long as Appellant was in possession of sufficient information to warrant a reasonably prudent person to conduct further investigation into the availability of public utilities, he is charged with notice. *Id.* Here, the record indicates that Appellant was provided with information that the land was subject to all City of Corpus Christi ordinances, including the platting ordinance, which prohibits connection of utilities to unplatted property. He was informed that this property was not platted. He was also informed that if the land was not platted, he should seek the advice of an attorney regarding his ability to connect utilities to the property or otherwise improve the land. This evidence provided

the jury with a basis to conclude that Appellant should have been aware of the potential that the property could not be developed as he desired. The jury's conclusion is not so contrary to the great weight of the evidence to be either wrong or unjust. *Cain,* 709 S.W.2d at 176. Appellant's second issue is overruled.

■ By his final issue, Appellant contends that the trial court abused its discretion in denying his motion to compel the information requested in discovery regarding individuals designated as testifying experts by appellees. Appellees designated Larry Urban as a testifying expert on July 31, 1996. Mary and Porfirio Lopez served interrogatories and requests for production on appellees, seeking information regarding their testifying experts. Subsequently, Urban was "redesignated" as a consulting expert. Appellant filed a motion to compel, which was denied. Appellant then filed a motion to reconsider the disclosure of Urban's knowledge. The trial court granted the motion in part, requiring production of the requested material for in camera inspection. Appellees responded to the order by producing a development cost estimate produced by Urban's company, Urban Engineering.

Appellant narrowly interprets precedent to conclude that redesignation of experts is permissible only where the initial designation was inadvertent. *See Tom L. Scott, Inc. v. McIlhany,* 798 S.W.2d 556, 558 (Tex.1990) (orig.proceeding) (limiting redesignation of experts); *Castellanos v. Littlejohn,* 945 S.W.2d 236, 241 (Tex. App.—San Antonio 1997, orig. proceeding) (permitting redesignation when initial designation erroneous due to clerical error). In *Tom L. Scott,* the initial plaintiffs and certain third-party defendants designated six experts as testifying experts. 798 S.W.2d at 558. The experts were prepared to give damaging testimony against the original defendants, but on the morning the experts' depositions were to be taken, the defendants settled with the designating parties. *Id.* As a condition of the settlement, the defendants gained control of the experts. *Id.* The defendants then redesignated all six as consulting-only experts. *Id.* The supreme court held that the redesignation ran afoul of the policy underlying the rules of discovery: truth seeking. *Id.* at 560.

In the course of its decision, the court went to some length to distinguish the case from others, particularly a decision made by the Fort Worth Court of Appeals. *See Jones & Laughlin Steel, Inc. v. Schattman,* 667 S.W.2d 352, 355–56 (Tex.App.—Fort Worth 1984, orig. proceeding). In *Schattman,* the expert in question was not designated as a consulting-only expert until after his deposition had commenced and after the court had granted a motion to compel him to answer questions regarding his expert opinions. *Id.* at 353, 355. The court of appeals held that, despite the last-minute nature of the designation, the trial court abused its discretion in ordering discovery of the expert's opinions and mental impressions "after he had been designated as a consultant." *Id.* at 356. The supreme court found *Schattman* distinguishable from *Tom L. Scott* because *Schattman* did not involve an agreement "between adversaries to suppress testimony...." *Tom L. Scott,* 798 S.W.2d at 560 n. 8. Thus the court's narrow holding permitted "a testifying expert to be 'de-designated' so long as it is not part of 'a bargain between adversaries to suppress testimony' or for some other improper purpose." *Castellanos,* 945 S.W.2d at 240.

There is nothing in the record to indicate that Urban's redesignation was made for an improper purpose.[5] Instead, the record indicates that after the court's partial grant of the motion to compel, appellees submitted Urban's report to the court,

---

**5.** Additionally, there is nothing in the record to indicate that Urban's testimony would have affected the jury's determination that Appellant had sufficient knowledge to warrant further inquiry on November 29, 1990.

negating the inference that appellees sought to "get around" Appellant's requests.

■ The trial court is imbued with discretion to rule on matters related to discovery. *General Tire, Inc. v. Kepple,* 970 S.W.2d 520, 526 (Tex.1998); *Jampole v. Touchy,* 673 S.W.2d 569, 574–75 (Tex. 1984). We will not reverse the decision of the trial court unless there is some indication that the court acted without reference to guiding principles or acted arbitrarily and unreasonably. *Koslow's v. Mackie,* 796 S.W.2d 700, 704 (Tex.1990). In light of the supreme court's decision in *Tom L. Scott,* we hold the trial court did not abuse its discretion by permitting the redesignation of Urban. Accordingly, Appellant's third issue is overruled.

The judgment of the trial court is AFFIRMED.

Justices DORSEY, RODRIGUEZ, and POFF join the majority opinion.

Dissenting Opinion by Justice YAÑEZ.

This case involves professional real estate agents and appraisers portraying property as having utilities when it did not. Because there is insufficient evidence to support the jury's finding that Lopez knew or should have known about these misrepresentations and negligence by the close of the transaction, I dissent.

The jury was asked to answer the following question in reaching its verdict:

> By what date did or should Porfirio G. Lopez, Mary M. Lopez or Lino Lopez, in the exercise of reasonable diligence, have discovered all of the false, misleading, deceptive acts or practices, breaches of warranty, fraudulent, or negligent acts?

### ANSWER WITH A DATE IN THE BLANK BELOW:

Answer: *November 29, 1990*

The jury's task was to decide this fact issue based on a preponderance of the evidence. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). In considering a factual sufficiency point, we must assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust, shocking to the conscience, or clearly demonstrating bias. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain,* 709 S.W.2d at 176. In considering an insufficient evidence point, an appellate court must defer to the jury, so as not to pass judgment upon the credibility of witnesses or merely substitute its judgment for that of the trier of fact. *DeLeon v. Pickens,* 933 S.W.2d 286, 289 (Tex.App.—Corpus Christi 1996, writ denied).

It is undisputed that no one ever explicitly informed the Lopezes the property lacked utilities in 1990. The majority is satisfied that if the Lopezes knew the land was unplatted in 1990, then they knew or should have known to further investigate the availability of utilities. I disagree. Even if the Lopezes were informed the land was unplatted at the closing, nothing suggests they should have been aware of the significance of unplatted land with regard to utilities.

According to the majority, the jury's finding is supported by evidence that at the closing the Lopezes were informed: (1) the land was not platted; (2) that if the land was not platted they "should seek the advice of an attorney regarding [their] ability to connect utilities to the property or otherwise improve the land;" and (3) that the land was subject to the platting ordinance. The majority also relies on Mary Lopez's "contemporaneously" written notes to signify knowledge the land was unplatted.

A close examination of the record reveals scant evidence to support a finding that the Lopezes even knew or should have known the property was unplatted by the date of closing, much less that it lacked utilities. No document presented to the

Lopezes stated that the land was unplatted. The only evidence even remotely suggesting the Lopezes were aware the land was unplatted was elicited from Scherer, the closing officer. Scherer testified she had no independent recollection of anything said by any of the parties at the November 29, 1990 closing, but she was certain she read a document entitled "Purchaser(s) General Acceptance," to the Lopezes because it was her procedure to read the document verbatim to buyers and place a line through any inapplicable provisions. Mary Lopez testified that at the closing no one reviewed any of the documents with her line by line.

The Purchaser(s) General Acceptance letter, signed by Mary and Porfirio Lopez, contained the provision "[i]f the property is not platted I have been informed that I should seek advice of my attorney to determine if there would be any *difficulty improving the property and securing a permit from the City to do so.*" (emphasis added). Scherer concluded that because the document had two other paragraphs marked out, and the language referring to platting was not altered, she must have revealed to the Lopezes that the property was "unplatted." Lucille Skaggs, another escrow agent employed by the same company as Scherer, testified that the letter at issue is a form document used for platted and unplatted property alike and that an escrow agent would not mark out this language pertaining to unplatted land because it is a standard exception.

A close examination of Scherer's testimony reveals she never used the term "unplatted" in her discussion with the Lopezes or explained the significance of platting as it relates to utilities. On cross-examination, Scherer testified as follows:

Q: You said earlier that you had no independent recollection of this transaction.

A: Yes.

Q: Okay. And you were asked if you told the Lopezes the property was unplatted and you said, yes.

A: Yes.

Q: Okay. How can you say that you told them if you have no independent recollection?

A: It's not my independent recollection. It's the procedure of my closing practice that I do this.

* * * *

Q: [I]n what context would you have told a purchaser if the property was platted or unplatted? How would that come up?

A: It's usually described in the legal description whether it's filed for record in the platting records.

Q: Okay. So how would you tell somebody, then? If you were being—if we were at a closing, right now, and you had a document, how would you tell somebody this fact; how would you phrase it to them?

A: It depends on the question they asked.

Q: No. You said that you would have told them, earlier. We're not talking about any questions. We're talking about what you would have told them at closing. How would you have told them this?

A: *That the property is—described in field notes, and it is not filed for record.*

Q: Okay. And would you tell them anything else?

A: No.

Q: Okay. And they're supposed to know from that that it's unplatted?

A: I cannot say.

* * * *

Q: [D]id you use the word "unplatted," or did you just describe this process that you told me about and that's supposed to mean unplatted?

A: I would have—I guess, I would have to say that the *meaning* would have to be that it was unplatted. (emphasis added).

Even if Scherer was correct in surmising she informed the Lopezes at closing that the land was "described in field notes" and was "not filed for record," these obscure references simply do not suggest they should have known the land was unplatted.

The majority also states Lopez was informed to seek the advice of an attorney regarding his "ability to connect utilities to the property or otherwise improve the land." Scherer never testified that she informed the Lopezes to seek the advice of an attorney regarding the connection of utilities, but rather that she read the Purchaser(s) General Acceptance letter, word for word, to the Lopezes. The document refers only to difficulties in improving the land and securing permits, not to the ability to connect utilities to the property.

I also disagree that the jury finding is supported by evidence Lopez had notice the land was subject to the platting ordinance. Both Scherer and Skaggs emphasized that the closing documents explained that the *title policy* was subject to all city zoning and building ordinances. The title commitment received by the Lopezes prior to the closing briefly refers to the platting ordinance. However, any reservations by the title company are wholly irrelevant to whether the Lopezes had facts before them to cause them to investigate the misrepresentations about utilities. There is no evidence that the closing officer, or anyone else, actually discussed the substance of the platting ordinance with the Lopezes, which prohibits not only *the connection of utilities* to unplatted property, but also *the sale* of unplatted property.

Based on this record, the jury could not have properly inferred that Scherer provided the Lopezes sufficient facts about the unplatted nature of the property to cause them to inquire about a lack of utilities.

In relying on Mary Lopez's handwritten notes to establish that the Lopezes knew or should have known the land was unplatted, the majority overstates the evidence.

The notes do not "indicate a need to call officials in the City Planning Office to discuss 'platting'" as the majority concludes. There are two references to "Harry Power," "planning," and the city planning department phone number in Mary's notes. One reference has the phrase "I–2 Light Industrial" next to it; the other has the word "plated" next to it. These notations appear on separate pages with other names and phone numbers apparently related to the property. At trial, Mary never explained the reason she had Power's name and the planning department's number in her notes. Moreover, there is no evidence the notes were taken at the time of the closing or that the closing officer had provided the information at the time of closing. In fact, Mary testified the notes were made *prior to* the closing and during the process of purchasing the property, not at the closing. The jury could not properly infer notice that the land was unplatted or lacked utilities from these unexplained notes.

The majority asserts there is sufficient evidence that a reasonably prudent person would have conducted further investigation into the availability of public utilities. The law required Lopez to exercise only reasonable care and diligence to discover facts, conditions, or circumstances which would cause a *reasonable person* to make inquiry leading to the discovery of the injury. *See Stewart Title Guar. Co. v. Becker*, 930 S.W.2d 748, 756 (Tex.App.—Corpus Christi 1996, writ denied).

The Lopezes testified they did not understand the significance of platting at the time of closing. City planner Harry Power testified that he regularly interacts with the public on platting matters and that, in his experience, the public generally does not understand the significance of platting. The only evidence suggesting that ordinary persons understand platting is Skaggs's comment that the buyers in Corpus Christi are "sophisticated" and are generally aware when property is in a

subdivision or unplatted. Nonetheless, both Skaggs and Scherer admitted that if they were placed in Lopez's position, where an appraiser told them in writing that the land had utilities and a real estate agent told them the property had utilities and was ready for improvements, nothing in the standard closing documents would have caused them to question these representations. On this evidence, where professionals associated with the real estate industry, who are presumably familiar with platting and its significance, would not have questioned the presence of utilities under the same circumstances, the evidence does not support a finding that an ordinary person such as Lopez was in possession of sufficient facts to cause him to investigate further.

The Lopezes testified the first time they learned the land was not platted was in early 1994, after they sought to place a security light on the property. The power company advised the Lopezes it was unable to put the light on the property and referred them to city hall to obtain a building permit. According to the Lopezes, the city planning department subsequently informed them the land had no utilities.

The jury's finding that the Lopezes knew or should have known to investigate the availability of public utilities at the time of closing is based on too many weak inferences to survive factual sufficiency scrutiny. The overwhelming weight and preponderance of the evidence shows that the Lopezes did not and should not have known of the property's lack of utilities in 1990. For this reason, I would hold the evidence is factually insufficient to support the finding, and reverse and remand for a new trial.

Justices HINOJOSA and CHAVEZ join in the dissent.