

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00056-CV

| | | |
|---|---|---|
| Kevin D. Spruell AND Darcy Spruell, Individually and as Next Friend of Camryn Spruell, a Minor | § | From the 431st District Court |
| | § | of Denton County (2008-40389-362) |
| v. | | |
| | § | January 31, 2013 |
| USA Gardens at Vail Leasco, L.L.C., USA Gardens at Vail, L.L.C., and Internacional Realty, Inc. | § | Opinion by Justice Walker |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

It is further ordered that appellants Kevin D. Spruell and Darcy Spruell, Individually and as Next Friend of Camryn Spruell, a Minor shall pay all of the costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Sue Walker



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00056-CV

KEVIN D. SPRUELL AND DARCY
SPRUELL, INDIVIDUALLY AND AS
NEXT FRIEND OF CAMRYN
SPRUELL, A MINOR

APPELLANTS

V.

USA GARDENS AT VAIL LEASCO,
L.L.C.; USA GARDENS AT VAIL,
L.L.C.; AND INTERNACIONAL
REALTY, INC.

APPELLEES

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is a summary judgment appeal. Two-and-a-half-year-old Camryn

Spruell received debilitating, lifelong injuries when she fell from an open window

[1]*See* Tex. R. App. P. 47.4.

in her third-story apartment. Appellant Kevin D. Spruell and Appellant Darcy Spruell, individually and as next friend of Camryn Spruell, the divorced parents of Camryn, filed suit against Appellees USA Gardens at Vail LeasCo, L.L.C.; USA Gardens at Vail, L.L.C.; and Internacional Realty, Inc.,[2] asserting causes of action for premises liability, breach of the implied warranty of good and workmanlike repair, negligent repair, and gross negligence. Appellees filed no-evidence and traditional motions for summary judgment on all claims asserted by Kevin and Darcy, which the trial court granted. Kevin and Darcy both perfected appeals. On appeal, Kevin and Darcy filed separate briefs, both raising the same two points: the trial court erred by granting Appellees' motion for traditional and no-evidence summary judgment, and the trial court erred by denying Kevin's and Darcy's motions to strike the testimony of Michael Welton. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In 2007, Darcy visited the Gardens at Vail Apartment Homes and viewed apartment 3319; she decided to rent the apartment. Darcy entered into a Texas Apartment Association (TAA) form lease entitled "Apartment Lease Contract" (the Lease Agreement) with the owner of the complex—USA Gardens at Vail LeasCo, L.L.C.—in January 2007.

The Lease Agreement contains the following paragraph:

---

[2]Kevin also sued Eric Frankfurt Homes, Inc. but later nonsuited his claims against Eric Frankfurt Homes. Appellees also nonsuited their crossclaims against Eric Frankfurt Homes. Eric Frankfurt Homes is not a party to this appeal.

3

24.  RESIDENT SAFETY AND PROPERTY LOSS.  You and all occupants and guests must exercise due care for your own and others' safety and security, especially in the use of smoke detectors, door and window locks, and other safety or security devices.  You agree to make every effort to follow the Security Guidelines on page 5.  Window screens are not for security or keeping people from falling out.

The Lease Agreement also contains Paragraph 28, which allows the landlord re-entry into the apartment.  Upon move in, Darcy inspected the apartment and completed the TAA's "Inventory and Condition Form," noting no damage or defects in the living room windows, latches, and screens on the form.

After Darcy settled into the third-floor apartment with her daughter Camryn, Darcy submitted a maintenance request for the two windows in the living room because the right window would slam down if opened and the left one would gradually work its way down after it had been opened.  The windows were low-sill windows; the sills were seven inches off the ground.  Darcy wanted to be able to open the windows and keep them open.  Felix Galvan on the maintenance staff at the apartment complex lubricated the track of the left window, and it then stayed open to Darcy's liking.[3]

On May 19, 2007, Darcy opened the left window three-fourths to 100% of its capacity and wanted it to remain open to provide fresh air.  On that day, while Darcy was cooking in the apartment, Camryn fell from the third-story apartment through the left window in the living room and sustained serious and permanent

_____

[3]The maintenance request was submitted February 20, 2007, and the repairs were completed March 21, 2007.

4

injuries. At the time of the accident, the screen covering the window from which Camryn fell contained the following language: "WARNING: Screen will not stop child from falling out window. Keep child away from open window."

### III. Summary Judgment for Appellees Was Proper

In their first points, both Appellants argue that the trial court erred by granting Appellees' traditional and no-evidence motion for summary judgment.

### A. Standard of Review

When a party moves for both no-evidence and traditional summary judgment, we first review the trial court's summary judgment under the no-evidence standard. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). Under that standard, after an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199

5

S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). When the trial court's judgment rests upon more than one independent ground or defense, the aggrieved party must assign error to each ground, or the judgment will be affirmed on the ground to which no complaint is made. *Scott v. Galusha*, 890 S.W.2d 945, 948 (Tex. App.—Fort Worth 1994, writ denied).

## B. No Evidence of Breach of the Implied Warranty of Good and Workmanlike Repair and No Evidence of Negligent Repair

Appellants argue that genuine issues of material fact exist on their claims for breach of the implied warranty of good and workmanlike repair. Darcy argues that Appellees breached the warranty of good and workmanlike repair when they undertook to repair her window so that it would open fully but failed to take any precautions to prevent children from falling from the window. Kevin argues that the questions of the wrongdoing in the performance of the repairs and whether the repairs were the proximate cause of Camryn's injuries are genuine issues of fact, precluding summary judgment.

An implied warranty exists that a service provider will perform repairs in a good and workmanlike manner. *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). A good and workmanlike manner means "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 446 (Tex. 1995); *Melody Home Mfg. Co.,* 741 S.W.2d at 354. The implied warranty focuses on a service provider's conduct by defining the level of performance expected when the parties fail to make an express provision in their contract for such performance. *Centex Homes v. Buecher,* 95 S.W.3d 266, 273–74 (Tex. 2002).

Here, Darcy submitted a maintenance request for the windows in the living room of her apartment to be repaired to remain open whenever she raised them. The apartment complex repaired the windows pursuant to Darcy's maintenance request; the windows functioned as normal windows, remaining open when raised. No evidence exists that the windows in Darcy's apartment were not repaired in a good and workmanlike manner. To the extent that Appellants claim that Appellees breached the implied warranty to perform the repairs in a good and workmanlike manner because Appellees did not install safety locks, a window guard, or other childproof devices on the windows, Appellants have pointed us to no case law, and we have found none, holding that the failure to install additional, unrelated features constitutes a breach of the implied warranty to perform repairs in a good and workmanlike manner. *Accord Sears, Roebuck & Co. v. Nichols*, 819 S.W.2d 900, 905 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (holding that Sears did not breach the implied warranty to repair a lawnmower in a good and workmanlike manner by not removing belt knowledgeable customer did not want removed).

Moreover, Michael Welton, an expert with thirty years of experience who was originally designated by Appellants and later cross-designated by Appellees, testified at his deposition that the features that—after Camryn's fall—Appellants claim should have been installed on the window were not required by any building code. Welton testified that there was no code or standard that required window guards to be placed on the window to constrict the window opening at

8

the time of the accident. Welton testified that under all the standards, it was appropriate for the window to open to its full height. Welton also testified that at the time of the accident, the low window sills did not violate any standard or code. Welton said that Appellees did not violate any code or standard by failing to remedy or change the window screens or with regard to the stickers on the screen. Welton testified that there was "no standard written, unwritten, published, [or] unpublished that would suggest that the window as it appeared in May 2007 was a safety hazard." Concerning any duty owed by Appellees to Appellants, Welton testified that an apartment landlord does not have a duty to inspect the interior of an apartment on a regular basis after the apartment has been rented, unless there is an emergency or a suspicion of illegal activity.[4] Welton agreed that Appellees did not "do anything to breach any duty, to do a good workmanlike and safe manner repair"; that they did not "improperly perform repairs with regard to this window because there was no standard that [they] could have met or breached"; and that they met all minimum standards with regard to the standard of care.

Having examined the entire record in the light most favorable to Appellants as the nonmovants, indulging every reasonable inference and resolving any

[4]Welton did offer his *opinion* that Appellees should have placed a pin in the window so that it would open only four inches. Welton conceded that Appellees' failure to do this did not breach the implied warranty to repair the window in a good and workmanlike manner and that no standard or code required this; he based his opinion on what he claimed to be Appellees' "fiduciary duty" to the residents in the building.

doubts against the motion, we hold that there is no evidence that would enable reasonable and fair-minded jurors to differ in their conclusions because there is no evidence that Appellees' repair of the window—which was not improperly performed, was completed in accordance with the maintenance request, enabled the window to work properly after the repair, satisfied Darcy, and was not in violation of any code or standard—breached the implied warranty of good and workmanlike repair. *See Hamilton*, 249 S.W.3d at 426; *Sudan*, 199 S.W.3d at 292; *see also Bossier Chrysler Dodge II, Inc. v. Rauschenberg*, 201 S.W.3d 787, 805 (Tex. App.—Waco 2006) (holding that "we cannot say that the record contains evidence which 'would enable reasonable and fair-minded people' to conclude that Bossier County breached an implied warranty of good and workmanlike performance" when requested repairs were made in a good and workmanlike manner, though Bossier County was not able to completely fix the oil leak), *aff'd in part and rev'd in part on other grounds by* 238 S.W.3d 376 (Tex. 2007); *U.S. Marine Corp. v. Kline*, 882 S.W.2d 597, 601 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding that there was no evidence, expert or otherwise, to show that boat repairs were done negligently, thus overturning jury's finding that boat repairs were not performed in a good and workmanlike manner); *Nichols*, 819 S.W.2d at 905 (holding that Sears did not breach implied warranty as a matter of law because Sears performed work that was authorized by customer on the motor mounts in a proficient manner; Sears was not required to remove belt because such work was not requested by customer). The trial

court therefore properly granted Appellees' no-evidence motion for summary judgment on Appellants' claims for breach of the implied warranty of good and workmanlike repair.

Finally, no discernable difference exists between a claim that repairs were not performed in a good and workmanlike manner and a claim that repairs were negligently performed. *See Coulson v. Lake L.B.J. Mun. Util. Dist.*, 734 S.W.2d 649, 651 (Tex. 1987); *see also Archibald v. Act III Arabians*, 755 S.W.2d 84, 86 (Tex. 1988) (Wallace, J., dissenting). To the extent that there is a difference between the standards of care in actions for negligence and for breach of the implied warranty of good and workmanlike performance of services, the latter is the more demanding standard, and therefore conduct that does not breach the implied warranty of good and workmanlike performance of service does not constitute negligence. *Daneshjou Co. v. Goergen*, Nos. 03-04-00730-CV, 03-04-00734-CV, 03-04-00735-CV, 03-04-00737-CV, 03-04-00738-CV, 03-04-00739-CV, 03-04-00740-CV, 2008 WL 3171256, at *7 n.14 (Tex. App.—Austin Aug. 8, 2008, pet. denied) (mem. op.). Thus, the trial court properly granted Appellees' no-evidence motion for summary judgment on Appellants' claims for negligent repair. We overrule that portion of Appellants' first points pertaining to their claims for breach of the implied warranty of good and workmanlike repair and negligent repair.

## C. Premises Liability Claims and Gross Negligence Claims Fail Because No Exception to the No-Duty Rule Applies

Appellants argue that genuine issues of material fact exist on their premises liability claim. In a premises-liability case, the plaintiff must establish a duty owed to the plaintiff, breach of the duty, and damages proximately caused by the breach. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010). Whether a duty exists is a question of law for the court. *Id.* In premises-liability cases, the scope of the duty turns on the plaintiff's status. *Id.*

Generally, a landlord has no duty to tenants or their invitees for dangerous conditions on the leased premises. *See, e.g.*, *Johnson Cnty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996); *Brownsville Navigation Dist. v. Izaguirre*, 829 S.W.2d 159, 160 (Tex. 1992). This rule stems from the notion that a lessor relinquishes possession of the premises to the lessee. *Endsley*, 926 S.W.2d at 285. Texas courts, however, recognize several exceptions to this general no-duty rule. A lessor may be liable for injuries arising from (1) the lessor's negligent repairs, (2) concealed defects of which the lessor was aware when the premises were leased, and (3) a defect on a portion of the premises that remained under the lessor's control. *Id.*; *see also* Restatement (Second) Of Torts §§ 357 (regarding negligent repairs), 358 (regarding concealed defects), 360 (regarding portion of premises remaining in lessor's control).

Appellants rely on the first and third exceptions to the general no-duty rule, contending that, under these exceptions, Appellees owed them a duty. As

12

discussed above, no evidence exists that Appellees' repair of the window was performed negligently; thus, the first exception to the general no-duty rule does not apply here. *See Strunk v. Belt Line Rd. Realty Co.*, 225 S.W.3d 91, 99 (Tex. App.—El Paso 2005, no pet.) (upholding summary judgment for premises owner lessor when plaintiff—lessee's invitee—failed to produce a scintilla of evidence that owner had control over the premises or had made a negligent repair).

Appellants argue under the third exception to the general no-duty rule—the right-of-control exception—that Appellees retained effective control over the windows in Darcy's apartment because the terms of the lease permitted Appellees to enter Darcy's apartment to make repairs; expressly prohibited Darcy from making any repairs to the property; and required Darcy to agree not to alter, damage, or remove property. Appellants further argue that "[b]ecause Appellees retained a right of re-entry to make repairs to the windows, coupled with the prohibition on Appellants['] repairing or altering the windows, Appellees retained control over the windows, creating a duty to maintain them so as not to pose a danger to Appellants."

Liability under the right-of-control exception is based on physical possession of common areas; the liability question "turns on who had possession of a part of the premises rather than a mere right of re-entry." *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 296 (Tex. 2004). As the Texas Supreme Court stated in *Khan*,

13

We have addressed Khan's precise arguments before, and rejected them. In *Flynn v. Pan American Hotel Co.*, the owner of the St. Anthony Hotel in San Antonio leased the entire property to another corporation to operate. The lessor retained the right to make repairs or improvements at will (and in fact made extensive renovations), and barred the lessee from making any changes without the lessor's written consent. Nevertheless, when a hotel employee was injured in an elevator accident, we held the lessor could not be held liable because it did not retain a right to control any part of the premises:

> The terms of the lease, which have been stated, and the acts of the parties to the lease show that it was contemplated and intended that respondent should have the right to enter on the property to make improvements and repairs; but the reservation by a lessor of a right to enter the premises to make such repairs and alterations as it may elect to make is not a reservation of control over a part of the building and an obligation on the part of the lessor to make repairs does not arise from the reservation of such right.

Because the defect in *Flynn* was not concealed, we held the lessee assumed responsibility for existing defects, and the landlord was not liable to the lessee's employee.

*Id.* at 297 (footnotes omitted).

Here, the lease's terms regarding re-entry are not in dispute; paragraph 28 of the lease gave Appellees a right of re-entry. But, as set forth above, a contractual right of re-entry by Appellees to make repairs or improvements is not a reservation of control over a portion of the building subjecting Appellees to liability. *See id.* Thus, merely retaining the right to re-enter the premises to make alterations and repairs does not trigger the right-of-control exception to the general no-duty rule. Darcy and Camryn had possession of the apartment

14

containing the window; no evidence exists that Appellees retained "possession" of the window at issue.[5]

Having examined the entire record in the light most favorable to Appellants as the nonmovants, indulging every reasonable inference and resolving any doubts against the motion, we hold that there is no evidence that would enable reasonable and fair-minded jurors to differ in their conclusion that Appellees had no right to control the window in Darcy's living room. *See Khan*, 138 S.W.3d at 298 (holding that Khan presented no evidence that Shell had a right to control premises conditions at the station); *Daitch v. Mid-Am. Apartment Cmtys., Inc.*, 250 S.W.3d 191, 195 (Tex. App.—Dallas 2008, no pet.) (holding that there was no evidence that Mid-America retained physical possession of the air conditioner or that apartment dweller used it in common with others); *see also Strunk*, 225 S.W.3d at 99.[6] Because no evidence exists that Appellees fall within either of the

---

[5]Appellants' subargument—that the window formed the "exterior envelope of the building" and was therefore a common area that was under Appellees' control—likewise fails. *See Stein v. Gill*, 895 S.W.2d 501, 503 (Tex. App.—Fort Worth 1995, no writ) (holding that because steps accessed only lessee's apartment and deck, they were not a common area but instead were part of the leased property that lessor conveyed exclusively to lessee under the apartment lease).

[6]Appellants urge us to rely on *Jones v. Houston Aristocrat Apartments, Ltd.*, 572 S.W.2d 1 (Tex. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.). *Jones* held that the provisions of a lease—which permitted the landlord to enter the premises for the purpose of making repairs and forbade the tenant from making any alteration or improvement in the premises without the prior consent of the landlord—granted the landlord effective control of the flooring in the apartment. *Id.* at 3. Because the Texas Supreme Court implicitly overruled the 1978 *Jones*

15

two exceptions pleaded by Appellants to the general no-duty rule, the trial court properly granted Appellees' no-evidence motion for summary judgment on Appellants' claims for premises liability. *See Khan*, 138 S.W.3d at 298 (holding that trial court properly granted summary judgment on premises liability claim); *Daitch*, 250 S.W.3d at 195 (same); *Strunk*, 225 S.W.3d at 99 (same). And because no evidence exists that Appellees fall within either of the two exceptions pleaded by Appellants to the general no-duty rule, the trial court also properly granted Appellees' no-evidence motion for summary judgment on Appellants' claims for gross negligence. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 623 (Tex. 2009) ("As with negligence actions . . . a defendant may be liable for gross negligence only to the extent that it owed the plaintiff a legal duty."); *West v. SMG*, 318 S.W.3d 430, 442–43 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (holding that trial court did not abuse its discretion by granting SMG's motion for summary judgment because concertgoer failed to bring forth sufficient evidence on the element of duty, a necessary element of her negligence and gross negligence claims). We overrule the remainder of both Appellants' first points.[7]

---

opinion in its 2004 *Khan* opinion, we decline to follow *Jones*. *See Khan*, 138 S.W.3d at 296.

[7]Because we have held that no evidence exists supporting Kevin's causes of action, we need not address Kevin's argument that his causes of action were not barred by a statute of limitations. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary to final disposition of the appeal).

## IV.  TRIAL COURT DID NOT ERR BY DENYING APPELLANTS' MOTION TO STRIKE THE TESTIMONY OF MICHAEL WELTON

Both Appellants in their second points contend that the trial court erred by denying their motions to strike the testimony of Michael Welton and by considering "the inadmissible testimony of Appellants' de-designated expert witness Michael Welton."  Darcy sets forth the following procedural background related to this point:

> Appellants initially designated Mr. Welton to be a testifying expert, and Mr. Welton was deposed.  Appellants then de-designated Mr. Welton as a testifying expert, re-designated him as a consulting-only expert, and affirmatively averred that he would not be called to testify.  However, Appellees nevertheless relied heavily on the deposition testimony of Mr. Welton in support of their summary judgment motion.  Appellants timely objected to and moved to strike Appellees' use of the testimony of Appellants' de-designated expert witness Michael Welton as summary judgment evidence.  Under the Rules of Civil Procedure, after his de-designation as a testifying expert and re-designation as a consulting-only expert, his opinions and beliefs were no longer discoverable or admissible.  [Citations omitted.][8]

Appellants' argument fails to acknowledge that the trial court conducted a hearing and signed an order allowing Appellees to cross-designate Welton as a testifying expert for Appellees.  Appellees thus relied on the testimony of Welton as their own expert witness, who testified regarding the window's compliance with applicable building code standards, in support of Appellees' motion for summary judgment.

---

[8]A similar version of this background is set forth in Kevin's brief.

17

Appellants raise no arguments challenging Appellees' expert's qualifications; they contend only that Appellees were not permitted to rely on the expert that they had de-designated as a testifying expert and redesignated as a consulting expert. This premise is not supported by case law. *See Tom L. Scott, Inc. v. McIlhany*, 798 S.W.2d 556, 559–60 (Tex. 1990) (orig. proceeding) (rejecting defendants' redesignation of testifying experts as consulting experts and stating that the protection afforded by the consulting expert privilege is intended to be only "a shield to prevent a litigant from taking undue advantage of his adversary's industry and effort, not a sword to be used to thwart justice or to defeat the salutary objects" of discovery); *accord Hooper v. Chittaluru*, 222 S.W.3d 103, 108 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (concluding that appellant should not have been prohibited from calling Dr. Lambert as a witness solely on the basis that Dr. Lambert was appellee's expert); *Castellanos v. Littlejohn*, 945 S.W.2d 236, 241 (Tex. App.—San Antonio 1997, orig. proceeding) (explaining that a party will not be permitted to de-designate an expert to protect his or her opinions from discovery when there is an improper purpose behind the de-designation); *see also Lopez v. Martin*, 10 S.W.3d 790, 794–95 (Tex. App.—Corpus Christi 2000, pet. denied). Moreover, after a hearing before the trial court, the trial court granted Appellees' request to designate Welton as an expert for Appellees. We therefore hold that the trial court did not abuse its discretion by denying Appellants' motion to strike the testimony of

Welton.  *See, e.g., McIlhany*, 798 S.W.2d at 559–60.  We overrule both Appellants' second points.

## V. CONCLUSION

Having overruled both Appellants' two points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DELIVERED:  January 31, 2013