COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
FRANCIS J. STRUNK,                                    )                  No. 08-04-00156-CV
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  68th District Court
)
BELT LINE ROAD REALTY CO. and              )                  of Dallas County, Texas
ARROW INDUSTRIES, INC.,                           )
                                     ) (TC# 02-07650-C)
                                    Appellees.                        )


O P I N I O N

            Francis J. Strunk appeals from summary judgments granted in favor of Belt Line Realty Co.
and Arrow Industries, Inc. We affirm in part and reverse and remand in part. 
FACTUAL SUMMARY
            On May 27, 1999, Strunk was on a back haul run to pick up plastic bags for Reddy Ice at
Arrow’s warehouse facility located at Trend Drive in Farmer’s Branch, Texas. When he arrived at
the location, Strunk backed his truck onto the loading dock at the north end of the building. He
exited the vehicle and, while walking alongside his trailer on the paved driveway area, stepped into
a large puddle of water. The puddle contained algae and caused Strunk’s left foot to slip. Strunk
fell on the left side of his body and was knocked unconscious from the impact. He reported his
injury and received medical treatment.
The Petition
            Strunk sued Belt Line and Arrow for premises liability, negligence per se, and gross
negligence, alleging the companies either owned, occupied, or maintained the premises where he was
injured. Strunk claimed that Belt Line owned the property and leased it to Arrow. With regard to
premises liability, Strunk claimed he was an invitee who had entered the premises as a vendor. Belt
Line and Arrow owed him a duty to use ordinary care and to safeguard and protect him from
unreasonable dangerous conditions on the premises or to at least warn of their existence. Strunk
alleged that Belt Line and Arrow’s failure to clean up the algae puddles on driveways where vendors
had to drive and walk was negligent, that he had no notice of the condition, that his injury was
proximately caused by the dangerous condition existing on the premises and that Belt Line and
Arrow had actual or constructive knowledge of the condition. Strunk also contended that the
sidewalk and driveway were defective due to their maintenance, construction, and design since they
were built and maintained in such a way that allowed accumulation of puddles in walkway areas and
that Belt Line and Arrow should have repaired the conditions to allow for proper drainage. With
regard to his claim of negligence per se, Strunk asserted that the walkway and driveway areas were
designed, constructed, and maintained in contravention of building and safety codes. Finally, he
alleged that Belt Line and Arrow were liable for gross negligence since they opened a building to
the public that was in violation of building codes without properly inspecting the walkway and
driveway for safety and code compliance.
The Motions
            Belt Line filed a motion for summary judgment, arguing that it owed no duty because it was
not in control of the premises, the property was leased to Arrow, and it did not have actual or
constructive knowledge of the purportedly dangerous condition. Belt Line also asserted there was
no evidence that it was in control of the premises, that it failed to inspect the premises, that it failed
to correct the dangerous condition, that it failed to warn invitees that a dangerous condition existed,
or that it failed to remedy a defective design and condition of the drainage plan. 
            Arrow also filed a motion for summary judgment. It claimed there was no evidence that it
occupied or controlled the premises, that the puddle constituted an unreasonably dangerous
condition, that it knew or should have known about the condition on the premises, that it was
negligent in inspecting or maintaining the premises or in warning invitees, that the premises were
defective in maintenance, construction or design, or that the parking lot was not in compliance with
the appropriate building and safety codes.
The Responses
            Strunk responded to Belt Line’s motion by arguing that there were critically obvious issues
of fact:
● Belt Line employees walked through slippery pools of stagnant water for years
without realizing the danger when it was the only route to the entrance door. 
 
● As the lessor of the property, Belt Line was responsible for inspecting the premises
and failed to do so. 
 
● While a lessor is relieved of its duty to inspect only if the lease agreement truly
represents a net lease, the lease in question was not a net lease. Since the lease
mentioned only the building and not the parking area, Belt Line retained control at
least as to that part of the premises. 
 
● Belt Line employees would have seen the stagnant puddles in the parking area and
upon any inspection would have seen algae growing in the puddles. 
 
● Leaving wet slimy algae where invitees had to walk was negligence per se. 

 

● The slab was not maintained in accordance with ordinary engineering standards or
code regulations, and Belt Line failed to erect, or tell Arrow to erect, warning signs. 

Strunk attached as evidence an extract of his deposition testimony, an expert report, building codes, 

and pictures of the site.

            Strunk also responded to Arrow’s motion for summary judgment, arguing that he had
established critically obvious issues of fact: 
 
● Arrow had the responsibility of maintaining the property and failed to do so. 

            ● Arrow owed him a duty of care as an invitee. 
 
● Arrow had control of part of the premises and had actual or constructive
knowledge of the defect for some time. 
 
● The slab was not maintained in accordance with ordinary engineering standards or
code regulations, and Arrow failed to erect warning signs. 

Strunk again attached as evidence an extract of his deposition testimony, an expert report, building
codes, and pictures of the site in addition to referring the court to the lease agreement. 
The Expert Report
            By affidavit, the expert testified that he was a mechanical engineer and had received training
as a safety engineer. He opined that the landlord and tenant were aware of or should have been
aware of the large, obvious problem of the pooling water. Property offered for use by business
patrons and vendors should be free from recognized hazards likely to cause injury. Falls can be
prevented through (1) physical design characteristics of the walking surface and its support features,
(2) general fixed user characteristics, (3) shoe sole and heel materials, (4) anticipated environmental
conditions, and (5) inspection, cleaning, and maintenance methods. A major characteristic impacting
safety was the coefficient of friction of the surface material, which measures slipperiness. Strunk’s
fall was similar to slipping on a banana peel since the coefficient of friction for the mucus-like
substance (algae) was very low and similar in some degree to oil on top of ice. 
            In four inspections of the site in 2003, the expert found a pooling of water at the northern end
of the parking facility next to the loading dock. On all visits, he found algae which was visible when
he looked directly into the pools of water. The concrete was broken and slightly tilted and the
pooling could have been a result of natural seepage from the underlying water table or from rains. 
The expert spoke to the current tenants of the building who told him the water pooling was a
problem. The algae in the pools was tested by Professor James Glover at the University of Texas
at Arlington Biology Department. Glover found the algae to be cyanobacteria, which is commonly
called blue-green algae. The period of incubation for the algae was a minimum of four days and
most likely one week. The algae was slimy and unstable and had a low coefficient of friction,
meaning it was very slippery. 
            In examining the engineering of the parking area, the expert found the parking lot surface had
been either misdesigned, misconstructed, or damaged to a point where the drainage slope had failed. 
According to building code, the slope of the parking lot should have had a minimum drainage slope
of 2 percent. The slope in the puddle area was in violation of code. The pooling of the water and
the improper drainage slope created a dangerous condition.
            Moreover, Belt Line and Arrow either knew or should have known they had the responsibility
to exercise reasonable care to maintain the premises free from reasonably foreseeable hazards. The
hazard was open and obvious and would have been discovered in a safety inspection. Belt Line and
Arrow should have used systematic planned safety inspections. They should have reasonably
foreseen that leaving pools of water unattended for a week or more was a danger. Pools of water
with a slick substance like algae on hard concrete was an obvious danger. Belt Line and Arrow
failed to eliminate the fall hazard or to provide a proper drainage slope to prevent such a hazard and
thus failed to comply with provisions in the building codes or to erect warning signs. 
PROPRIETY OF SUMMARY JUDGMENT
            In Point of Error One, Strunk complains that the trial court erred in granting summary
judgment in favor of Belt Line. In Point of Error Two, he asserts that the trial court erred in granting
summary judgment in favor of Arrow. 
Standards of Review
            Belt Line and Arrow moved for summary judgment under Rules 166a(c) and 166a(I) of the
Texas Rules of Civil Procedure. In a traditional summary judgment proceeding, the standard of
review on appeal is whether the successful movant at the trial level carried the burden of showing
that there is no genuine issue of material fact and that judgment should be granted as a matter of law. 
Lear Siegler, Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991); Duran v. Furr's Supermarkets, Inc.,
921 S.W.2d 778, 784 (Tex.App.--El Paso 1996, writ denied). Thus, the question on appeal is not
whether the summary judgment proof raises fact issues as to required elements of the movant’s cause
or claim, but whether the summary judgment proof establishes, as a matter of law, that there is no
genuine issue of material fact as to one or more elements of the movant’s cause or claim. Gibbs v.
General Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970); Duran, 921 S.W.2d at 784. In resolving
the issue of whether the movant has carried this burden, all evidence favorable to the non-movant
must be taken as true and all reasonable inferences, including any doubts, must be resolved in the
non-movant’s favor. Nixon v. Mr. Property Management Co., Inc., 690 S.W.2d 546, 548-49 (Tex.
1985); Duran, 921 S.W.2d at 784. A defendant who conclusively negates at least one essential
element of each theory pled by the plaintiff is entitled to summary judgment. Wornick Co. v. Casas,
856 S.W.2d 732, 733 (Tex. 1993); see Camacho v. Samaniego, 954 S.W.2d 811, 817 (Tex.App.--El
Paso 1997, pet. denied). 
            A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the
same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in
reviewing a directed verdict. Moore v. K Mart Corp., 981 S.W.2d 266, 269 (Tex.App.--San Antonio
1998, pet. denied.); Robinson v. Warner-Lambert & Old Corner Drug, 998 S.W.2d 407, 410
(Tex.App.--Waco 1999, no pet.); see also S.V. v. R.V., 933 S.W.2d 1, 8 (Tex. 1996). We review the
evidence in the light most favorable to the respondent against whom the no-evidence summary
judgment was rendered, disregarding all contrary evidence and inferences. Merrell Dow
Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997); Moore, 981 S.W.2d at 269;
Robinson, 998 S.W.2d at 410. A no-evidence summary judgment is improperly granted if the
respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of
material fact. Havner, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence
is “so weak as to do no more than create a mere surmise or suspicion” of a fact. Ruiz v. Government
Employees Ins. Co., 4 S.W.3d 838, 840 (Tex.App.--El Paso 1999, no pet.), citing Kindred v.
Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists when the
evidence “rises to a level that would enable reasonable and fair-minded people to differ in their
conclusions.” Havner, 953 S.W.2d at 711. If reasonable minds could not differ as to the conclusion
to be drawn from the non-movant’s evidence, the movant’s motion should be granted. See Triton
Oil & Gas Corp. v. Marine Contractors & Supply, Inc., 644 S.W.2d 443, 446 (Tex. 1982).
 

Summary Judgment for Belt Line:
Premises Liability

            As with any cause of action based on negligence, the threshold question in a premises
liability case is the existence and violation of a duty. El Chico Corp. v. Poole, 732 S.W.2d 306, 311
(Tex. 1987); Wyatt v. Kroger Co., 891 S.W.2d 749, 751 (Tex.App.--Fort Worth 1994, writ denied);
Staublein v. Dow Chemical Co., 885 S.W.2d 502, 505 (Tex.App.--El Paso 1994, no writ). The
plaintiff has the burden of proving that the injury occurred on premises owned or occupied by the
defendant before duty can be imposed. See Vela v. Cameron County, 703 S.W.2d 721, 723
(Tex.App.--Corpus Christi 1985, writ ref’d n.r.e.). Whether a legal duty exists under a given set of
facts and circumstances is a question of law for the court. Greater Houston Transp. Co. v. Phillips,
801 S.W.2d 523, 525 (Tex. 1990); Wyatt, 891 S.W.2d at 751. If no duty exists, then no legal liability
can arise. Wyatt, 891 S.W.2d at 751.  
            Generally, a landlord has no duty to tenants or their invitees for dangerous conditions on the
leased premises. Cadenhead v. Hatcher, 13 S.W.3d 861, 863 (Tex.App.--Fort Worth 2000, no pet.). 
This rule stems from the notion that a lessor relinquishes possession of the premises to the lessee. 
Id. There are several exceptions to this rule, such as where a lessor makes a negligent repair or
where the injury arises from a defect on a portion of the premises that remains under the lessor’s
control. Id., citing Parker v. Highland Park, Inc., 565 S.W.2d 512, 514-15 (Tex. 1978). The duty
owed by a landlord to its tenant is to use reasonable care to protect the tenant from injuries caused
by an unsafe condition on the portion of the premises still under the lessor’s control. Id. The
landlord owes this same duty to those who are on the premises with the tenant’s consent. Id. This
duty requires the landowner to exercise reasonable care to protect the invitee from risks that the
owner is actually aware of, and also those risks that the owner should be aware of after a reasonable
inspection. Id. at 863-64. 
            The lease agreement attached as evidence to Belt Line’s motion described the leased property
as “a one story masonry building of approximately 59,400 sq. ft. situated on approximately 2.2498
acres in the Brookhaven Business Park and known as 14934 TREND DR., Farmers Branch, Texas.” 
The leased property totaled 98,000 square feet. A special condition of the lease provided: 
It is understood that this is to be a net lease and that Tenant is to pay all expenses
associated with the operation and maintenance of the above described real property. 
Tenant shall at all times at its sole cost and expense keep the roof, foundation, and
exterior walls (excluding all windows and doors) of the building situated on the
demised premises in good repair and condition, except for reasonable wear and tear.

            While Strunk relied upon the lease agreement, he did not produce any evidence showing that
Belt Line, as the owner of the property, had retained any control over the premises when it leased
them to Arrow or that Belt Line had made a negligent repair. Strunk has failed to produce a scintilla
of evidence that Belt Line had control over the premises where the alleged injury occurred. We
overrule Point of Error One and affirm the summary judgment in favor of Belt Line.
Summary Judgment for Arrow
            We begin by addressing Arrow’s argument that it objected to all of Strunk’s summary
judgment evidence. Arrow suggests that because summary judgment was granted in its favor, we
must infer that the trial court also ruled favorably on the objections. Where the trial court fails to
rule on objections to summary judgment evidence, in some instances, a party need not obtain an
express ruling to preserve error if the ruling is implicit in the court’s findings. Blum v. Julian, 977
S.W.2d 819, 823-24 (Tex.App.--Fort Worth 1998, no pet.). For there to be an implicit ruling, there
must be something in the record to indicate the trial court ruled on objections other than the mere
granting of the summary judgment. In re Estate of Schiwetz, 102 S.W.3d 355, 360 (Tex.App.--Corpus Christi 2003, pet. denied), citing Jones v. Ray Ins. Agency, 59 S.W.3d 739, 753 (Tex.App.--
Corpus Christi 2001, pet. denied). Here, there is no indication, implicitly or otherwise, that Arrow’s
objections were ruled upon. We turn now to the merits of Strunk’s Point of Error Two.
            Premises Liability
            The plaintiff has the burden of proving that the injury occurred on premises owned or
occupied by the defendant before duty can be imposed. See Vela, 703 S.W.2d at 723. Whether a
legal duty exists under a given set of facts and circumstances is a question of law for the court. 
Phillips, 801 S.W.2d at 525; Wyatt, 891 S.W.2d at 751. The essential elements of a premises
liability claim are: (1) actual or constructive knowledge of a condition on the premises by the owner
or occupier; (2) that the condition posed an unreasonable risk of harm; (3) that the owner or occupier
did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner or occupier’s
failure to use such care proximately caused the plaintiff’s injury. CMH Homes, Inc. v. Daenen, 15
S.W.3d 97, 99 (Tex. 2000).
            The lease agreement between Belt Line and Arrow was included in the summary judgment
evidence before the court. Under the lease, Arrow was responsible for maintenance of the described
property including the roof, foundation, and exterior walls of the building. Strunk produced
sufficient probative evidence to create a genuine issue of material fact as to whether Arrow was in
control of the premises where his injury occurred.
            To demonstrate that the occupier of the premises had actual or constructive knowledge of an
unreasonably dangerous condition on the premises, a plaintiff must produce evidence that “(1) the
defendant placed the substance on the floor, (2) the defendant actually knew that the substance was
on the floor, or (3) it is more likely than not that the condition existed long enough to give the
premises owner a reasonable opportunity to discover it.” Wal-Mart Stores, Inc. v. Reece, 81 S.W.3d
812, 814 (Tex. 2002). To show that Arrow had actual or constructive knowledge of the condition,
Strunk needed to produce some temporal proof of how long the hazard had existed before the
accident. See id. at 816. If the amount of time did not give the owner a reasonable opportunity to
discover the dangerous condition, there is no constructive knowledge and no liability. Id. Taken as
true, Strunk’s evidence established that (1) there was algae in the puddle where he fell, (2) the algae
was cyanobacteria, and (3) the algae needed a minimum of four days to grow. Reasonable and fair
minded jurors could disagree on whether the foregoing evidence established Arrow’s constructive
knowledge so that Strunk’s evidence properly raised a fact issue. 
            “A condition presenting an unreasonably risk of harm is one in which there is such a
probability of a harmful event occurring that a reasonably prudent person would have foreseen it or
some similar event as likely to happen.” Wyatt v. Furr’s Supermarkets, Inc., 908 S.W.2d 266, 269
(Tex.App.--El Paso 1995, writ denied), citing Seideneck v. Cal Bayreuther Assoc., 451 S.W.2d 752,
754 (Tex. 1970). The expert testified that the algae tested from the puddles had a very low
coefficient friction and was very slippery. The drainage slope in the puddling area was not within
code regulations. The combination of the puddle and improper slope created a dangerous condition. 
Viewing the evidence in Strunk’s favor, we conclude that he produced more than a scintilla of
evidence raising a fact issue on whether the condition was unreasonably dangerous.  
            A possessor of land is subject to liability for physical harm caused to his invitees by a
condition on the land if, but only if, he (1) knows or by the exercise of reasonable care would
discover the condition, and should realize that it involves an unreasonable risk of harm to such
invitees, (2) should expect that they will not discover or realize the danger, or will fail to protect
themselves against it, and (3) fails to exercise reasonable care to protect them against the danger. 
Restatement (Second) of Torts § 353 (1965). The occupier is under the further duty to exercise
reasonable care in inspecting the premises to discover any latent defects and to make safe any defects
or to give an adequate warning. Restatement (Second) of Torts § 343, Comment b (1965). It
owes a duty to exercise ordinary care to warn the invitee of any dangerous conditions which the
occupier knows or should know about and which are not reasonably apparent to the invitee. Sun Oil
Co. v. Massey, 594 S.W.2d 125, 129 (Tex.Civ.App.--Houston [1st Dist.] 1979, writ ref’d n.r.e.). The
expert noted that had Arrow inspected the puddles, it would have discovered the algae and should
have recognized the danger the algae posed to invitees on the property. He had visited the site four
times and found the pooling of water on all occasions. Taken as true, Strunk’s evidence raises a fact
issue as to whether Arrow was negligent in inspecting the property, maintaining the property, and
warning invitees.
Negligence Per Se
            An unexcused violation of a statute or ordinance may constitute negligence per se if the
injured plaintiff belongs to the class of persons the statute or ordinance was designed to protect. See
Nixon, 690 S.W.2d at 549. The injured plaintiff claiming negligence per se must be able to establish
that the defendant's statutory or ordinance violation was a proximate cause of his injury. See id. The
expert reported that the slope of the parking lot should have been 2 percent under the guidelines in
the City of Farmers Branch Building Code, the Standard Building Code, the Uniform Building Code,
and the AIA’s Architectural Graphic Standards. He attached the building codes to his affidavit. 
More than a scintilla of evidence exists to create an issue of fact as to whether the parking area
violated building codes.
Gross Negligence
            Gross negligence contains two elements: (1) from the actor’s standpoint, the act or omission
complained of must involve an extreme degree of risk, considering the probability and magnitude
of the potential harm to others, and (2) the actor must have actual subjective awareness of the risk
involved but nevertheless proceed in conscious indifference of the rights and safety or welfare of
others. Lee Lewis Const., Inc. v. Harrison, 70 S.W.3d 778, 785 (Tex. 2001). Circumstantial
evidence may be sufficient to prove both elements, and some evidence of care by movants does not
necessarily defeat a showing of gross negligence. Id. Extreme risk means the likelihood of serious
injury to the complaining party, and actual awareness means that the actor knew about the peril but
the acts or omissions complained of demonstrated that the defendant did not care. Id. Strunk failed
to present a scintilla of evidence to show that Arrow had a subjective awareness of the risk involved
in the puddles yet nevertheless proceeded in conscious indifference of the rights and safety or welfare
of others. 
            We sustain Point of Error Two in part. We reverse and remand as to Strunk’s claims for
premises liability and negligence per se. We affirm the summary judgment in favor of Arrow on the
gross negligence cause of action. 


August 31, 2005                                                          
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Barajas, C.J., McClure, and Chew, JJ.