ANN CRAWFORD McCLURE, Chief Justice
Monika Bates sued Pecos County for wrongful termination under three common law theories, and the Texas Whistleblower statute. The case comes to us after the trial court granted Pecos County's motion for summary judgment, or alternative plea to the jurisdiction. For the reasons explained below, we affirm.
FACTUAL SUMMARY
Bates was employed as an emergency medical technician with Pecos County from October 2008 until she was terminated on April 4, 2011. She acknowledged being hired as an "at will" employee. While employed, Bates was paid twice a month. In mid-March 2011, she was told on receipt of her regular paycheck that there was some problem with payroll, and that she would not get overtime pay until her next paycheck. At the end of the month, and while *282 at her workplace, she concluded that the County shorted her overtime pay on the end of the month paycheck. She became upset-in her words "livid"-as this was at least the third time she believed it had happened. While walking into a make shift room that lacked any ceiling, she uttered out loud an expletive laden statement.[1] Her supervisor, Frank Rodriquez, overheard the statement and quickly confronted her, contending that her use of vulgarities violated the department's policy against insubordination. In response to her contention that she was shorted overtime pay, Rodriquez called the county treasurer's office to inquire about the overtime issue. Following that call, he told Bates that because she had taken a sick day off, she was not entitled to overtime in that pay period. That same day he placed her on suspension, and the County then terminated her on April 4, 2011 for violation of policy.
Bates then filed a discrimination claim with the EEOC. She complained about how overtime was compensated, or more specifically as she claimed, not compensated. She also contended that she was discriminated against on the basis of her gender and national origin.
Following receipt of her right to sue letter from the EEOC, Bates filed suit against Pecos County and her former supervisor, Frank Rodriquez, asserting four theories related to her termination of employment: breach of contract; negligence; infliction of emotional distress; and a whistleblower claim under TEX.GOV'T CODE ANN. § 554.002 (West 2012). The alleged gender and national origin discrimination is not part of her suit. Frank Rodriquez was dismissed on his motion for summary judgment, and no issue is raised on appeal with respect to that dismissal. Pecos County later moved for its own summary judgment under traditional and no evidence grounds, and it asserted an alternative plea to the jurisdiction. The trial court granted the County's motion.
STANDARD OF REVIEW
Bates brings four issues on appeal which in varying ways attack the trial court's decision to grant summary judgment, or the alternate plea to the jurisdiction. We review the trial court's decision to grant summary judgment de novo. Travelers Ins. Co. v. Joachim , 315 S.W.3d 860, 862 (Tex. 2010). The County filed a hybrid motion including both traditional and no-evidence grounds. The trial court granted the motion without specifying the grounds. In this situation, we review the no-evidence motion first. Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).
A no-evidence motion for summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard of review as we would for a directed verdict. King Ranch, Inc. v. Chapman , 118 S.W.3d 742, 750-51 (Tex. 2003). Under this standard, we review the evidence in the light most favorable to the non-movant, crediting evidence favorable to that party if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. Mack Trucks, Inc. v. Tamez , 206 S.W.3d 572, 582 (Tex. 2006). A genuine issue of material fact is raised if the non-movant produces more than a scintilla of evidence regarding the challenged element. King Ranch , 118 S.W.3d at 751. More than a scintilla of evidence exists when reasonable and fair-minded individuals *283 could differ in their conclusions. Id. at 751. There is not a scintilla of evidence when the evidence is so weak as to do no more than create a mere surmise or suspicion of material fact. Wade Oil & Gas, Inc. v. Telesis Operating Company, Inc. , 417 S.W.3d 531, 540 (Tex.App.-El Paso 2013, no pet.). Evidence that fails to constitute more than a mere scintilla is, in legal effect, no evidence at all. Lozano v. Lozano , 52 S.W.3d 141, 148 (Tex. 2001) ; Wade Oil & Gas , 417 S.W.3d at 540.
The County also asserted a traditional summary judgment under TEX.R.CIV.P. 166a(c). Under a traditional motion, the moving party carries the burden of showing that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. Diversicare General Partner, Inc. v. Rubio , 185 S.W.3d 842, 846 (Tex. 2005) ; Nixon v. Mr. Property Mgmt. Co., Inc. , 690 S.W.2d 546, 548 (Tex. 1985). Evidence favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of material fact. Fort Worth Osteopathic Hospital, Inc. v. Reese , 148 S.W.3d 94, 99 (Tex. 2004) ; Tranter v. Duemling , 129 S.W.3d 257, 260 (Tex.App.-El Paso 2004, no pet.). All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. Fort Worth Osteopathic Hospital , 148 S.W.3d at 99. Once the movant establishes its right to summary judgment, the burden then shifts to the non-movant to present evidence which raises a genuine issue of material fact, thereby precluding summary judgment. See City of Houston v. Clear Creek Basin Authority , 589 S.W.2d 671, 678 (Tex. 1979).
The summary judgment motion here is overlaid onto the County's alternate plea to the jurisdiction. Sovereign immunity (from suit) denies a trial court subject matter jurisdiction over the suit unless the State expressly consents to suit. Harris County v. Sykes , 136 S.W.3d 635, 638 (Tex. 2004). Governmental immunity operates like sovereign immunity and affords similar protection to subdivisions of the State, including its counties. Id. Pecos County is entitled to immunity unless Bates pleads facts invoking a waiver of governmental immunity. See Mission Consol. Indep. Sch. Dist. v. Garcia , 372 S.W.3d 629, 636 (Tex. 2012) ; Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 224 (Tex. 2004). A governmental entity may challenge the existence of that prima facie case through a plea to the jurisdiction, or it may also include jurisdictional evidence which thereby places into issue the existence of a jurisdictional fact. Miranda , 133 S.W.3d at 225-26 ; Univ. of Texas at El Paso v. Ochoa , 410 S.W.3d 327, 330 (Tex.App.-El Paso 2013, pet. denied). The Texas Supreme Court has recognized that "[t]he absence of subject-matter jurisdiction may be raised by a plea to the jurisdiction, as well as by other procedural vehicles, such as a motion for summary judgment." State v. Lueck , 290 S.W.3d 876, 884 (Tex. 2009). Whether a trial court has jurisdiction is a question of law subject to de novo review. See Tex. Natural Res. Conservation Comm'n v. IT-Davy , 74 S.W.3d 849, 855 (Tex. 2002).
WHISTLEBLOWER CLAIM
A governmental entity "may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." TEX.GOV'T CODE ANN. § 554.002(a). The Act is intended to "enhance openness in government and compel the State's compliance with law by protecting those who inform authorities of wrongdoing."
*284 Tex. Dep't of Assistive & Rehabilitative Servs. v. Howard , 182 S.W.3d 393, 399 (Tex.App.-Austin 2005, pet. denied). Governmental immunity is expressly waived under the Act. See TEX.GOV'T CODE ANN. § 554.0035 (West 2012) ; County of El Paso v. Latimer , 431 S.W.3d 844, 848 (Tex.App.-El Paso 2014, no pet.).
Among other requirements, the good faith report must be the cause of the adverse action. City of Fort Worth v. Zimlich , 29 S.W.3d 62, 67 (Tex. 2000) ("To show causation, a public employee must demonstrate that after he or she reported a violation of the law in good faith to an appropriate law enforcement authority, the employee suffered discriminatory conduct by his or her employer that would not have occurred when it did if the employee had not reported the illegal conduct.")[Emphasis added]. The motion for summary judgment here focused in part on this element, arguing that the only "report" occurred after the termination when Bates told the EEOC about the overtime pay issue. Thus the report could not have been the cause of her termination. See Canutillo Indep. Sch. Dist. v. Farran , 409 S.W.3d 653, 656 (Tex. 2013) (plaintiff who made report to law enforcement after the adverse personnel action failed to meet causation burden); Texas Dept. of Aging and Disability Services v. Loya , 491 S.W.3d 920 (Tex.App.-El Paso 2016, no pet.) (same, in context of retaliation claim).
The County believed it had corralled Bates on her deposition into admitting that the only report she made was to the EEOC, and that report was made after she was terminated.[2] Bates summary judgment response, however, contained her own affidavit which mainly details to whom she reported the overtime pay issue:
'I have maintained from the time this lawsuit was filed until the present time that prior to my termination I went to the following individuals who I believe to be the appropriate individuals. I was taught that I was to go through the chain of command.'
'Before I was terminated I went to my Shift Captain whose name was Renny Spencer and indicated that we were being paid improperly and we were not being paid according to the law of the United States and /or Texas.'
'I also went to other members of the Emergency Medical Service (EMS) and voiced my opinion.'
'Before my termination on April 4, 2011, I personally went to the Treasurer's Office of Pecos County, Texas and indicated we were not being paid properly and being shorted money. I voiced my opinion and indicated to the Treasure's Office [sic]. The Treasurer at that time was Barry McCalester.'
*285 'On or before April 4, 2011, I called Judge Joe Shuster and indicated to him personally over the telephone what was happening and that I should receive monies that was [sic] being withheld and was not being paid to me. I do not know whether Judge Joe Shuster did anything or not. Judge Joe Shuster is the presiding officer of the Commissioner's Court of Pecos County, Texas.' She also claims her husband contacted 'various authorities as well as Federal authorities' to complain on both his and her behalf. Bates affidavit brings us to a subpart of her first issue on appeal addressing the admissibility of her affidavit.
Objections to the Affidavit
The County's summary judgment motion was filed on June 20, 2014. The response, which included Bates' affidavit, was filed August 5, 2014. The motion was eventually set for hearing on March 4, 2015, some seven months after the response had been filed. Five days before the hearing, the County filed a motion to strike the affidavit, contending it conflicted with Bates' deposition testimony and was thus a "sham affidavit." See Fred Loya Ins. Agency, Inc. v. Cohen , 446 S.W.3d 913, 927 (Tex.App.-El Paso 2014, pet. denied) ("An affidavit which is executed after a deposition and which presents a contradiction on a material point without explanation for the change merely creates a sham fact issue and the contradictory statements in the affidavit may be disregarded.").
The County argued its objections to the affidavit at the hearing, as well as the merits of the motion for summary judgment. At the conclusion of the hearing, the trial court asked Bates for an order denying, and the County for an order granting, the summary judgment motion, stating it would later sign whichever one was appropriate. The trial court did not explicitly rule on the motion to strike at the hearing or in the order granting the motion for summary judgment which it later signed. As a part of her first issue, Appellant contends the trial court would have abused its discretion in striking the affidavit under the sham affidavit doctrine. Pecos County contends the affidavit would have been properly struck. The parties extensively brief the merits of that issue. We resolve this issue, however, on a more fundamental ground.
On our record, the trial court never actually ruled on the motion to strike. An objection based on the sham affidavit rule is an attack on the form of the affidavit, and not its substance, such that it must be first addressed by the trial court. Rivas v. S.W. Key Programs, Inc. , 507 S.W.3d 777, 782 n.2 (Tex.App.-El Paso 2015, no pet.) ; Hogan v. J. Higgins Trucking, Inc., 197 S.W.3d 879, 883 (Tex.App.-Dallas 2006, no pet.) ; David F. Johnson, Joseph P. Regan, The Competency of the Sham Affidavit as Summary Judgment Proof in Texas, 40 St. Mary's L.J. 205, 259 (2008). Failure to obtain that ruling waives the evidentiary objection. Burrus v. Tornillo DTP VI, L.L.C. , 08-13-00333-CV, 2015 WL 8526539, at *2 (Tex.App.-El Paso Dec. 11, 2015, pet. denied) (mem. op. on rehearing); Trinh v. Campero, 372 S.W.3d 741, 744-45 (Tex.App.-El Paso 2012, no pet.) ; Torres v. GSC Enterprises, Inc., 242 S.W.3d 553, 560 (Tex.App.-El Paso 2007, no pet.) ; see TEX.R.APP.P. 33.1(a)(2)(A) (trial court must either expressly or implicitly rule on an objection in order for an issue to be preserved for review).
Pecos County presages this problem with a citation to language in this Court's opinion in Strunk v. Belt Line Rd. Realty Co. , 225 S.W.3d 91, 99 (Tex.App.-El Paso 2005, no pet.) that in "some instances, a party need not obtain an express ruling to *286 preserve error if the ruling is implicit in the court's findings." We further stated in Strunk , however, that "there must be something in the record to indicate the trial court ruled on objections other than the mere granting of the summary judgment." Id.[3] The County by citation to a footnote in Arellano v. Americanos USA, LLC , 334 S.W.3d 326 (Tex.App.-El Paso 2010, no pet.) contends the language of the order signed below supports an implicit ruling. The court in Arrellano found no implicit ruling on the matter before it. Id. at 329. But in footnote three, Arrellano cites a Fort Worth Court of Appeals opinion where an order granting summary judgment which stated that the trial court reviewed "all competent summary judgment evidence" implicitly overruled certain objections. Id. at 329, n.3, citing Frazier v. Yu , 987 S.W.2d 607, 610 (Tex.App.-Fort Worth 1999, pet. denied). The order granting summary judgment in this case states that the trial court considered all "relevant and admissible evidence."[4]
Pecos County essentially asks that we find an implicit ruling based on Frazier . We first note that several courts have criticized the holding in Frazier . See Parkway Dental Associates, P.A. v. Ho & Huang Properties, L.P. , 391 S.W.3d 596, 603 (Tex.App.-Houston [14th Dist.] 2012, no pet.) ("[T]his court has declined to follow the rule in [ Frazier ] as have most of the other intermediate courts of appeals that have addressed this issue."); Delfino v. Perry Homes , 223 S.W.3d 32, 34 (Tex.App.-Houston [1st Dist.] 2006, no pet.) ("In any event, the Fort Worth Court of Appeals' approach in these cases has been widely criticized."); Sunshine Min. and Refining Co. v. Ernst & Young, L.L.P. , 114 S.W.3d 48, 50-51 (Tex.App.-Eastland 2003, no pet.) (declining to follow Frazier despite nearly identical summary judgment order); Allen ex rel. B.A. v. Albin, 97 S.W.3d 655, 662 (Tex.App.-Waco 2002, no pet.) ; Trusty v. Strayhorn , 87 S.W.3d 756, 760 (Tex.App.-Texarkana 2002, no pet.) ; Well Solutions, Inc. v. Stafford , 32 S.W.3d 313, 317 (Tex.App.-San Antonio 2000, no pet.) ("But rulings on a motion for summary judgment and objections to summary judgment evidence are not alternatives; nor are they concomitants. Neither implies a ruling-or any particular ruling-on the other.").[5]
We decline to follow Frazier here for a number of reasons. First, the language of this order differs from that in Frazier . Bates (or the trial court) would not have been put on fair notice that Pecos County was submitting an order which implicitly granted the motion to strike when the County's form order used similar, but not identical language to that in Frazier . Second, the trial judge asked each party for a respective order granting or *287 denying the motion for summary judgment, and not the separate motion to strike. Finally, if the trial court was intending to sustain an objection, it is unclear which objection was sustained. The affidavit in our record was filed seven months before the hearing, but another affidavit by Bates, which is not of record, was apparently filed the day before the hearing. The County filed a separate motion to strike that second affidavit. We agree with another Fort Worth Court of Appeals opinion which states: [w]hen we cannot determine what implied ruling is to be inferred, we cannot expect the parties to be able to do so." Wrenn v. G.A.T.X. Logistics, Inc. , 73 S.W.3d 489, 498 (Tex.App.-Fort Worth 2002, no pet.).[6] Accordingly, for the purposes of our review, we consider the affidavit and decline to address the merits of that portion of Bates' first issue which assumes the trial court struck the affidavit.
Merits of the Whistleblower Claim
Concluding that the affidavit is part of the summary judgment record does not end our inquiry, as we must decide whether the affidavit (and the other summary judgment proofs) raise a genuine issue of material fact as to whether a good faith report was made to an appropriate person, or whether such a report, if made, was the cause of Bates' termination. The County raised each of these issues in its no evidence motion for summary judgment.
Under the Act, a whistleblower must make a report to "an appropriate law enforcement authority." TEX.GOV'T CODE ANN. § 554.002(b). That authority must be a part of a "state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." Id. at § 554.002(b)(1)(2).
The "good faith" belief has both a subjective and objective element. Tex. Dep't of Transp. v. Needham , 82 S.W.3d 314, 321 (Tex. 2002). An employee's belief is in good faith if: (1) the employee believed the governmental entity qualified; and (2) the employee's belief was reasonable in light of the employee's training and experience. Id. at 321. The first element is subjective, while the second element is an objective one: a reasonably prudent employee in similar circumstances would have to believe that the governmental entity to which the report is made was an appropriate law-enforcement authority. Id. at 320-21. Whether an employee has a good-faith belief "turns on more than an employee's personal belief, however strongly felt or sincerely held." Univ. of Tex. Sw. Med. Ctr. at Dallas v. Gentilello , 398 S.W.3d 680, 683 (Tex. 2013) [Emphasis in original].
Applying the objective element, the Texas Supreme Court has held that reports to internal authorities whose only power is to discipline its own staff or investigate *288 internally, does not generally support a good-faith belief of a report to a law-enforcement authority. Gentilello, 398 S.W.3d at 686. Instead, the authority must have outward-looking powers. "[I]t must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties." Id. Thus, in McMillen v. Texas Health & Human Services Commn. , 485 S.W.3d 427, 430 (Tex. 2016), a report to an internal inspector general's office was sufficient, but only because the inspector was charged with enforcement of a law as against everyone, both inside and outside the organization.
Similarly, reports to internal authorities up the chain of command are generally insufficient to trigger whistleblower protections. See Texas Dept. of Human Services v. Okoli , 440 S.W.3d 611, 613 (Tex. 2014) (employee who followed internal chain of command policy for complaints had not made good faith report for purposes of act); Ysleta Indep. Sch. Dist. v. Franco, 417 S.W.3d 443, 445-46 (Tex. 2013) (per curiam)(report to personnel whose only power is to oversee compliance within the entity was insufficient); Canutillo Indep. Sch. Dist. v. Farran, 409 S.W.3d 653, 655 (Tex. 2013) (per curiam)(complaints to a school board, superintendents, and internal auditor were not good-faith complaints to proper authority); Univ. of Houston v. Barth, 403 S.W.3d 851, 855-58 (Tex. 2013) (per curiam). In Barth, for instance, a university professor reported alleged violations of law by the dean of his college to the university's general counsel, the chief financial officer, the internal auditor, and an associate provost. 403 S.W.3d at 853. But "none of the four people that Barth reported to regarding alleged violations of the Penal Code ... could have investigated or prosecuted criminal law violations against third parties ..." and he thus failed to meet the good faith reporting requirement of the act. The Barth court also noted that the professor reported the violation to the university's police department, but only after the alleged retaliatory acts had already occurred. Id. at 857. The report to the police may well have been sufficient, but only if it preceded the retaliatory action. Id.
The rule we must apply is summarized in University of Texas Southwestern Medical Center v. Gentilello:
The upshot of our prior decisions is that for an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties. Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status. Indeed, holding otherwise would transform every governmental entity that is subject to any regulation or that conducts internal investigations or imposes internal discipline into law-enforcement authorities under the Act. Such a result would collide head-on with the Act's limited definition and our cases interpreting that definition.
398 S.W.3d at 686.
Under the Whistleblower Act, the authority's power to "regulate under" or "enforce" must pertain to "the law alleged to be violated in the report." TEX.GOV'T CODE ANN. § 554.002(b)(1). Consequently, it is critical to identify the law which is alleged to have been violated. McMillen , 485 S.W.3d at 429, citing *289 Needham, 82 S.W.3d at 320. Bates does not identify the precise law at issue here, other than by reference to her general complaint of not receiving overtime pay. We can only assume the law at issue is the Fair Labor Standards Act of 1938, codified at 29 U.S.C.A. §§ 201 - 19 (1998). That federal statute generally prohibits employers subject to the Act from failing to pay time and half wages for any hours worked over a forty hour work week. Id. at § 207(a)(1). An employer for the purposes of the Act includes a "public agency." Id. at § 203(d). Assuming Bates complained that that Pecos County's overtime pay practices violated that federal enactment, we conclude that she: (a) presented no evidence that any of the persons she claims to have reported the violation to were the appropriate authorities to handle federal wage and hour violations; or (b) the one report she did make to a proper authority was made after her termination such that the report could not be the cause of her termination.
Bates affidavit first reflects she reported the pay issue to her shift captain and other members of the EMS department. Nothing in the record reflects these persons had any outward looking authority for enforcing federal wage and hour claims. Under any of the precedents cited above, these internal reports fail to trigger the protections of the Whistleblower's Act. See Okoli , 440 S.W.3d at 613 ; Franco, 417 S.W.3d at 445-46 ; Farran, 409 S.W.3d at 655 ; Barth, 403 S.W.3d at 855-58.
Her affidavit also states that she went to the county treasurer's office. The Texas Constitution creates the county treasurer's office within each county and the Local Government Code defines the treasurer's duties. Tex.Const. art. XVI, § 44 (a); TEX.LOCAL GOV'T CODE ANN. § 113.001 - 113.005 (West 2008 & West Supp. 2016). The treasurer is responsible for receiving and segregating funds into separate accounts. Id. at § 113.003 and 113.004. The treasurer is also required to keep an account of the receipts and expenditures of all money received and to "keep accurate, detailed accounts of all the transactions of the treasurer's office." Id. at § 113.002. The county treasurer is the chief custodian of county funds. Id. at § 113.001. And the treasurer must keep a register listing all claims against the county, but cannot pay any of those claims until approved by the county auditor. Id. at § 113.061(a), § 113.064(a). Nothing about these duties makes the treasurer an officer delegated the responsibility to enforce wage and hour claims.
Bates' affidavit also indicates she complained to the county judge, who sits as the head of the commissioner's court. The role of a county judge as an appropriate law enforcement authority has received limited attention in prior cases.[7] Based on *290 the record here, and our review of statutory and constitutional authority, we conclude that the county judge does not have outward looking authority to enforce federal wage and hour claims throughout the county, and thus would not be an appropriate law enforcement authority under the Whistleblower Act.
The county judge is the presiding officer of the commissioner's court. Tex.Const. art. V, § 18 (b). The commissioner's court has both a legislative, executive, and judicial function. Avery v. Midland County, Texas , 390 U.S. 474, 482, 88 S.Ct. 1114, 1119, 20 L.Ed.2d 45 (1968) ; Commissioners Ct. of Titus County v. Agan , 940 S.W.2d 77, 79 (Tex. 1997). With respect to the judicial powers of this state, the Texas Constitution creates a number of courts, including constitutional county courts and commissioners courts. Tex. Const. art. V, § 1. "The County Judge is the presiding officer of the County Court and has judicial functions as provided by law." Tex. Const. art. V, § 16. The county judge is to be "well informed in the law of the State" and a conservator of the peace. Tex.Const. art. V, § 15. But prosecutions in the county court are initiated by the county attorney. Tex.Const. art. V, § 17 ; TEX.GOV'T CODE ANN. § 41.009 (West 2004) ("If a district or county attorney learns that an officer in his district or county who is entrusted with the collection or safekeeping of public funds is neglecting or abusing the trust confided in him or is failing to discharge his duties under the law, the district or county attorney shall institute the proceedings that are necessary to compel the performance of the officer's duties and to preserve and protect the public interest."). In his judicial capacity as county judge, the judge might hear a dispute over which the court had jurisdiction, but the judge himself would not investigate and initiate the claim.
The county judge and commissioner's court are the primary legislative body of each county. Tex. Const. art. V, § 18 ; Ector County v. Stringer , 843 S.W.2d 477, 478 (Tex. 1992). But in a legislative capacity, the county judge is not serving a law enforcement capacity. See Texas Commn. on Envtl. Quality v. Resendez , 450 S.W.3d 520, 523 (Tex. 2014) (report made to state senator's office was insufficient under the Whistleblower's Act because a "state senator's function is to legislate-to create law, not to enforce it.). Nor does that function extend to legislating under federal enactments. That is, the Department of Labor or Congress might legislate or issue rules under the FSLA, but not Pecos County. The county judge also serves an executive function, and might play a remedial role to solve a pay issue. But that remedial effort would be within the confines of the organization, and is therefore not the outward looking enforcement power required by prior case law.
Finally, Bates' affidavit claims her husband called "federal authorities" on her behalf. The affidavit does not say who those federal authorities were, what their specific function was, or even whether that report was made before or after her termination. The trial court therefore properly granted the no evidence motion for summary judgment because Bates failed to present any evidence she made a good faith report to an appropriate authority.
Bates also carried the burden to produce some evidence that any report she made was the cause of her termination.
*291 "[T]he employee's protected conduct must be such that, without it, the employer's prohibited conduct would not have occurred when it did." Tex. Dep't of Human Servs. v. Hinds, 904 S.W.2d 629, 636 (Tex. 1995) ; see also City of Fort Worth v. Zimlich, 29 S.W.3d 62, 67 (Tex. 2000) (employee's burden to show adverse employment action was taken "because" of good faith report). Circumstantial evidence may be sufficient to establish a causal link between the adverse employment action and the reporting of the illegal conduct. Zimlich, 29 S.W.3d at 69. That evidence might include: (1) the decision maker's knowledge of the report; (2) expression of a negative attitude toward the employee's report of the conduct; (3) failure to adhere to established policies regarding employment decisions; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the adverse employment action was false. Id. ; Contl.Coffee Products Co. v. Cazarez , 937 S.W.2d 444, 451 (Tex. 1996).
Bates primarily relies on the rebuttable presumption found in TEX.GOV'T CODE ANN. § 554.004(a) which provides: "if the suspension or termination of, or adverse personnel action against, a public employee occurs not later than the 90th day after the date on which the employee reports a violation of law, the suspension, termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report." Our problem with this argument, however, is that nothing in the affidavit states that her complaints to any of the specific officials fell within this ninety day window. She contended that there were prior problems with her paycheck, one of which occurred as far back as 2008, some three years before the termination. In another event, her time sheet was somehow lost by a supervisor, but it was replaced in time for her to be paid. The date of this other problem was unstated, as are the times of any prior reports.
Nor does her summary judgment response present any evidence of who the actual decision maker was, or whether the decision maker knew of her reports about the overtime pay issues. She presented no evidence of a negative attitude about reporting pay discrepancy issues. She presented some evidence that others who used vulgarities were not terminated, but she made this claim in the context of claiming sex or national origin discrimination. While she may have raised an inference that her use of vulgarities was not a sufficient reason for her termination, that claim standing alone raises no more than a scintilla of evidence as to the discriminatory motive that she was required to prove here. Cf. Wal-Mart Stores, Inc. v. Canchola , 121 S.W.3d 735, 740 (Tex. 2003) ("The relevant inquiry is not whether the complaints made against Canchola were a pretext, but what they were a pretext for. )[Emphasis in original]. We find the trial court did not err in granting summary judgment based on Bates' failure to present evidence of causation.
COMMON LAW CLAIMS
Bates also asserted claims for breach of contract, negligence, and infliction of emotional distress, all arising out of the same facts we have noted above. In addition to various challenges on the merits of each of those claims, Pecos County also contended it had not waived its governmental immunity. Both below and in her briefing here, Bates addresses the merits of her common law claims, but ignores the governmental immunity problem. We conclude that oversight is fatal to each theory.
*292 Governmental immunity operates like sovereign immunity and affords similar protection to Texas counties. Sykes , 136 S.W.3d at 638. Generally, a governmental unit possesses both immunity from liability and immunity from suit. Catalina Dev., Inc. v. County of El Paso , 121 S.W.3d 704, 705 (Tex. 2003) ; Travis County v. Pelzel & Assocs., Inc. , 77 S.W.3d 246, 248 (Tex. 2002). When a governmental unit contracts with a private party it waives immunity from liability, but not immunity from suit. Id. The governmental unit, here the County, can only waive immunity from suit through its express consent. Id. Bates fails to point to any such express consent, and we find none in the record.
For negligence claims, the State has expressed its waiver of immunity through the Texas Tort Claims Act (TTCA). TEX.CIV.PRAC. & REM.CODE ANN. § 101.021 et. seq. (West 2011); see Tex. Dep't of Crim. Justice v. Miller , 51 S.W.3d 583, 587 (Tex. 2001). Bates petition, which in a single word alleges her negligence claim, fails to specify any statutory basis for a waiver of immunity under the TTCA.
Bates infliction of emotion distress claim does not specify whether it alleges negligent or intentional infliction of emotional distress. If the claim is for negligent infliction of emotional distress, it suffers the same problem as her general negligence claim. If she is alleging an intentional tort, the TTCA act specifically "does not apply to a claim ... arising out of assault, battery, false imprisonment, or any other intentional tort ...." TEX.CIV.PRAC. & REM.CODE ANN. § 101.057(2). Intentional infliction claims do not fall within the TTCA waivers, and are accordingly barred. Hardin County Sheriff's Dept. v. Smith , 290 S.W.3d 550, 552-53 (Tex.App.-Beaumont 2009, no pet.) ; Midland Indep. Sch. Dist. v. Watley , 216 S.W.3d 374, 382 (Tex.App.-Eastland 2006, no pet.).
We overrule Issues One and Two to the extent they challenge the trial court's granting of the plea to the jurisdiction on the breach of contract, negligence, and infliction of emotional distress claims.
COMPLIANCE WITH SUMMARY JUDGMENT PROCEDURE
In her third issue, Bates complains that the County did not file its reply to her response to the motion for summary judgment until four days before the hearing. She contends this violates TEX.R.CIV.P. 166a(d) which requires appendices, references, and other discovery products not on file to be filed and served at least twenty-one days prior to the hearing. The reply, however, attached no evidence or material as described in Rule 166a(d). Instead it advanced the legal sham affidavit argument, and re-argued the grounds for summary judgment that had previously been set out in the original motion. The summary judgment rule does not affix a time for a reply brief. Knapp v. Eppright , 783 S.W.2d 293, 296 (Tex.App.-Houston [14th Dist.] 1989, no pet.). A reply is just that, and the time limits do not govern when it might be filed. Durbin v. Culberson County , 132 S.W.3d 650, 656 (Tex.App.-El Paso 2004, no pet.). So long as no additional ground is raised in a reply, or additional proofs offered, there is no error in the trial court receiving such a reply.
CONCLUSION
Bates' first and second issues challenge the trial court's granting of the summary judgment on each of her four theories. We overrule those issues for the reasons stated above. We overrule her third issue complaining of the timing of the County's reply brief. In Issue Four, she contends the trial court erred in granting the plea to the jurisdiction because the Whistleblower Act contains an express waiver of immunity.
*293 While that is true, we have affirmed the summary judgment on the merits of the Whistleblowers Act claim, which renders Issue Four moot. The judgment below is affirmed.
Hughes, J., not participating

She recalled saying "Around here you've got to be a liar, a thief, a cheat, and a f---ing criminal to get your goddamn money." Her supervisor recalled several more instances of the "f***" word interspersed in the tirade.

The strongest testimony cited by the County in that regard is as follows:
Q. And as far as this whistleblower stuff, I mean, you didn't report some violation of law to law enforcement and you got terminated for that?
A. Not law enforcement, per se, but labor board.
Q And what did you report to the labor board?
[Lawyer discussion]
A. Yes. When I contacted the labor board, it was in regards to-wait .... When I went to the labor board, it was to pose the question of how can they-how can they negate to pay me hours that I already worked and claim that they're only entitled to pay me this because this is how their pay scale is set up. Of course, the labor board informed me, first of all, you're being paid in error. You are solely an EMS entity. You are not law enforcement. You are not with the fire department. Therefore, the scale they're paying you on is illegal. ....
Q. Let me ask you this. That report to the labor board, that was done after termination, correct?
A. Yes....

In Strunk , we found nothing to support an implicit ruling. Strunk cited to In re Estate of Schiwetz , 102 S.W.3d 355, 360 (Tex.App.-Corpus Christi 2003, pet. denied) in support of the implicit holding rule, but likewise the Corpus Christi court in that case found no basis for an implicit ruling on objections to several affidavits.

The Order here stated:
On March 4, 2015, came on to be heard Defendant's Motion for Summary Judgment and Plea to the Jurisdiction. Having considered same, the pleadings and papers on file, relevant and admissible summary judgment evidence, and the laws of the State of Texas, the Court is of the opinion that the same are meritorious, should be, and are hereby GRANTED.

We recently distinguished, but did not criticize Frazier in a case transferred to us from the Fort Worth Court of Appeals where we are required to apply its precedents to the extent they conflict with our own. Chance v. Elliot & Lillian, LLC , 462 S.W.3d 276, 282 (Tex.App.-El Paso 2015, no pet.) ; Tex.R.App.P. 41.3.

The court in Dolcefino v. Randolph , 19 S.W.3d 906, 926 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) made this suggestion, which we also endorse:
We believe the better practice is for the trial court to disclose, in writing, its rulings on all objections to summary judgment evidence at or before the time it enters the order granting or denying summary judgment. Practitioners should facilitate this procedure by incorporating all parties' objections to summary-judgment evidence in proposed orders granting or denying summary judgment and including a 'Mother Hubbard' recitation to encompass any objections not otherwise addressed in the proposed orders.... In any context, however, it is incumbent upon the party asserting objections to obtain a written ruling at, before, or very near the time the trial court rules on the motion for summary judgment or risk waiver. See Tex.R.App.P. 33.1(a).

The issue was recently raised in Dallas County, Texas v. Logan , 420 S.W.3d 412 (Tex.App.-Dallas 2014, pet denied). The plaintiff there alleged he reported violations of several laws, including Texas Penal Code provisions and the federal Family Medical Leave Act. Id. at 417, 419. He made the reports to the county judge, and others. The court remanded the case to the trial court, on the plaintiff's request, for further development of the pleadings and evidence given that Dallas County first raised some of its challenges on appeal. Id. at 430-31. We also discussed the role of a county judge as the appropriate law enforcement authority in Upton County, Texas v. Brown , 960 S.W.2d 808, 821 (Tex.App.-El Paso 1997, no writ). But that case was decided before the statutory text defining an appropriate law enforcement official was added to the statute. See id. at 821 (noting citation to prior law under which case was decided); Act of June 15, 1995, 74th Leg., R.S. ch. 721, § 2, 1995 Tex.Gen.Laws 3812 (codified as Tex.Gov't Code Ann § 544.002(b))(adding new subsection defining appropriate law enforcement authority). The issue is also discussed in dicta contained in a footnote in Leach v. Texas Tech Univ. , 335 S.W.3d 386, 397 n.5 (Tex.App.-Amarillo 2011, pet. denied).